**UNITED STATES of America,
Petitioner,**

v.

**Honorable Sarah T. HUGHES, United
States District Judge for the Northern District of Texas, Respondent.**

**GIFFORD–HILL–AMERICAN, INC.,
Petitioner,**

v.

**Honorable Sarah T. HUGHES, United
States District Judge for the Northern District of Texas, Respondent.**

**UNITED CONCRETE PIPE CORPORA-
TION and Lloyd R. Earl, Petitioners,**

v.

**Honorable Sarah T. HUGHES, United
States District Judge for the Northern District of Texas, Respondent.**

**Nos. 24101, 24120 and 24121.**

United States Court of Appeals
Fifth Circuit.

June 2, 1969.

Thomas S. Howard, Atty., Dept. of Justice, Chicago, Ill., Howard E. Shapiro, Ronald B. Lewis, Attys., Dept. of Justice, Washington, D. C., for the United States.

Irwin F. Woodland, Los Angeles, Cal., William P. Fonville, Dallas, Tex., for United Concrete and Lloyd R. Earl.

Stanley E. Neely, Dallas, Tex., Laughlin E. Waters, William L. Scott, Los Angeles, Cal., for Gifford-Hill-American, Inc.

Gregory B. Hovendon, Atty., Dept. of Justice, Washington, D. C., for Sarah T. Hughes.

Before GODBOLD and SIMPSON, Circuit Judges, and McRAE, District Judge.

GODBOLD, Circuit Judge:

These three petitions for writs of mandamus raise important questions concerning the construction of the discovery provisions of the recently revised Federal Rules of Criminal Procedure, Fed.R. Crim.P. 16.[1] The cases were assigned for oral argument and supplemental briefing in an earlier opinion of this court. United States v. Honorable Sarah T. Hughes, 388 F.2d 236 (5th Cir. 1968).

All three cases arise out of a pending Sherman Act prosecution[2] in the Northern District of Texas. An indictment was returned January 20, 1966, charging United Concrete Pipe Corporation, Gifford-Hill-American, Inc., and Lloyd R. Earl, formerly Chairman of the Board of United, with conspiracy to fix prices, to submit rigged non-competitive bids and to divide the Texas market for concrete pressure pipe. The defendants in that criminal prosecution are the petitioners in Nos. 24120 and 24121. The United States is the petitioner in No. 24101.

On July 21, 1966, and subsequently,[3] the defendants filed pre-trial motions for discovery under Rule 16.[4] Under Rule 16 (a) (3), which allows a defendant to discover his recorded testimony before a grand jury, they moved for the production of the testimony of all present and former officers and employees of the corporate defendants before the Dallas, Texas grand jury which returned the indictment and a Los Angeles grand jury which previously had investigated a similar alleged conspiracy involving some of the defendants in the Texas prosecution. The defendants also moved under 16(b), which allows a defendant discovery upon a showing of a materiality to the preparation of the defense and of reasonableness, for the production of all documents material to the preparation of the defense,

1. The revised Rule 16 and the Advisory Committee's Notes appear at 39 FRD 163, 173–178 and at 18 U.S.C.A. Rule 16 (Supp.1969). Parts of the Rule pertinent to this case are as follows:

(a) *Defendant's Statements; Reports of Examinations and Tests; Defendant's Grand Jury Testimony.* Upon motion of a defendant the court may order the attorney for the government to permit the defendant to inspect and copy or photograph * * * (3) recorded testimony of the defendant before a grand jury.

(b) *Other Books, Papers, Documents, Tangible Objects or Places.* Upon motion of a defendant the court may order the attorney for the government to permit the defendant to inspect and copy or photograph books, papers, documents, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the government, upon a showing of materiality to the preparation of his defense and that the request is reasonable. Except as provided in subdivision (a) (2), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by government agents in connection with the investigation or prosecution of the case, or of statements made by government witnesses or prospective government witnesses (other than the defendant) to agents of the government except as provided in 18 U.S.C. § 3500.

(e) *Protective Orders.* Upon a sufficient showing the court may at any time order that the discovery or inspection be denied, restricted or deferred, or make such other order as is appropriate. Upon motion by the government the court may permit the government to make such showing, in whole or in part, in the form of a written statement to be inspected by the court *in camera.* If the court enters an order granting relief following a showing *in camera,* the entire text of the government's statement shall be sealed and preserved in the records of the court to be made available to the appellate court in the event of an appeal by the defendant.

2. 15 U.S.C.A. § 1 (1963).

3. The effective date of the amendment of Rule 16 was July 1, 1966.

4. The defendants' motions are set out in detail in sections 3 and 4 of this opinion, *infra.*

including transcripts of the Dallas and Los Angeles grand juries.

In an order reported at 41 F.R.D. 538,[5] the motions were granted in part and denied in part. Under 16(a) (3) District Judge Hughes allowed the corporate defendants to discover the testimony of officers and former officers before both grand juries.[6] Under 16(b) she allowed the defendants to discover documents submitted by all witnesses to the Dallas grand jury and by two key witnesses to the Los Angeles grand jury. Both the prosecution and the defendants filed the instant petitions attacking the court's rulings.

Following our initial opinion in this case, and pursuant to a suggestion therein, the defendants filed supplemental motions in the district court seeking discovery of the testimony of officers and employees on the basis of Fed.R.Crim.P. 6(e).[7] The district court, on a finding of particularized need, granted the same discovery under Rule 6(e) which it previously had granted under its 16(a) (3) order, plus the testimony of two named employees of United.[8] The court refused to grant discovery of the testimony of several additional employees on the ground that no particularized need existed.

■ Although the government insists that the district court's original order is erroneous insofar as it rests on Rule 16 (a) (3), it does not attack the second order issued under Rule 6(e). Since the second order grants the same relief as the first (plus the testimony of two additional witnesses), the government's mandamus petition, No. 24101, is effectually

mooted. However, since the testimony of defendants' employees granted under the Rule 6(e) order is that of less than all their employees, and since they claim to be entitled to the testimony of all employees as a matter of right under Rule 16(a) (3) and 16(b), their petitions remain viable.[9]

The issues that now remain for decision are:

(I) Is mandamus an appropriate remedy in this case?

(II) Under Rule 16(a) (3), are the corporate defendants entitled to discovery of the testimony given before the Los Angeles and Dallas grand juries by their present and former officers and employees?

(III) Did the court properly refuse the defendants' motions under Rule 16 (b) for the production of all documents in the government's possession material to the preparation of the defense and for the disclosure of the grand jury transripts?

## 1. Propriety of mandamus

■ All parties join in urging that mandamus is an appropriate remedy. But if we lack judicial power parties may not confer it upon us by concurring in a request for action. Therefore, we undertake an independent evaluation of the propriety of mandamus in this case.

The jurisdictional predicate of the All Writs Act, 28 U.S.C.A. § 1651, traditionally has been that a writ "issue in aid of an exercise of the Court of Appeals' appellate jurisdiction." Will v. United States, 389 U.S. 90, 95 n. 4, 19 L.Ed.2d 305, 310 n. 4 (1967).[10] The Court in *Will*

5. This order subsequently was amended in minor respects in an unreported order.

6. The order was in terms of "officers" but one of the individuals named was an ex-officer of one of the corporate defendants.

7. Also the motions reasserted 16(b) as a basis for discovery.

8. The second order also removed a restriction in the first order which had prohibited the defendants from exchanging discovered information.

9. The government does not contest the 16(b) order. However, it does oppose the defendants' claim that they are entitled to broader discovery under 16(b) than was granted.

10. Several recent cases point toward an expansion of the scope of mandamus in the exercise of the "supervisory control of the District Courts by the Courts of Appeal." *See* LaBuy v. Howes Leather Co., 352 U.S. 249, 259–260, 77 S.Ct. 309,

illustrated differing views of this requirement's application to interlocutory orders in criminal cases with the following citation: "Compare In re United States, 348 F.2d 624 (C.A. 1st Cir. 1965), with United States v. Bondy, 171 F.2d 642 (C.A.2d Cir. 1948)." *Id.* In *Bondy* the government sought mandamus to determine the propriety of a pre-trial order granting discovery to the defendants. The Second Circuit pointed out that because the government may not appeal in a criminal case, the order could not otherwise be reviewed by the court of appeals. It concluded that mandamus was not appropriate since "we have neither actual nor potential jurisdiction to review the order." 171 F.2d at 644. The First Circuit took a broader view of "potential jurisdiction" in In re United States, *supra*. Because an order allowing a criminal defendant to take depositions of government witnesses could be tested prior to trial by a contempt proceeding or by dismissal of the indictment, Judge Aldrich stated, "we see no reason why the government should not be able to do directly what it could effectuate indirectly." 348 F.2d at 625.

The present case fits within the views of both the First and Second Circuits of "potential jurisdiction." Because of the present posture of the case the relief which we could grant on mandamus would operate in favor of the defendants. The defendants, the only parties claiming to be prejudiced by the 16(a) (3) and 16 (b) orders, could, if convicted, challenge those orders on appeal. By passing on the court's orders at this juncture we would, in Judge Aldrich's terms, be doing directly what we could do indirectly. Moreover, unlike *Bondy*, we would not be reviewing an interlocutory order which could not be otherwise reviewed in the court of appeals. Insofar as the jurisdictional prerequisites of 28 U.S.C.A. § 1651

are concerned, we conclude that the mandamus petition is properly before us.

Our finding of jurisdiction is only the beginning of the inquiry. As the Supreme Court emphasized in *Will*, even when mandamus is within a court's jurisdiction it may be employed only in exceptional causes. *See also* Ex parte Fahey, 332 U.S. 258, 260, 67 S.Ct. 1558, 91 L.Ed. 2041, 2043 (1947). We recognize, and reiterate, that extraordinary prerogative writs may not be used indiscriminately to review interlocutory orders, La Buy v. Howes Leather Co., *supra*, or to thwart the Congressional policy against piecemeal appeals, Roche v. Evaporated Milk Association, 319 U.S. 21, 26, 63 S.Ct. 938, 87 L.Ed. 1185 (1943), or to alleviate the hardship resulting from an unnecessary trial in a particular case, United States Alkali Export Ass'n, v. United States, 325 U.S. 196, 202–203, 65 S.Ct. 1120, 89 L.Ed. 1554, 1560 (1945). Our reluctance to interfere with the progress of a trial is especially strong in criminal cases, where the Sixth Amendment guarantee of a speedy trial is present. *See, e. g., Will, supra*; Carroll v. United States, 354 U.S. 394, 77 S.Ct. 1332, 1 L.Ed.2d 1442 (1957); Cobbledick v. United States, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940).

■ Despite our appropriate reluctance to employ the mandamus remedy, we conclude that a cumulation of factors causes this case to be of the exceptional and extraordinary nature that justifies the use of the writ. Schlagenhauf v. Holder, 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed. 2d 152 (1964).[11] The issues presented are basic, they concern the extent of a district court's power under a newly adopted rule of procedure, and they have not been passed on by this court. *See* Securities and Exchange Commission v. Krentzman, 397 F.2d 55 (5th Cir. 1968).

1 L.Ed.2d 290, 299 (1957); Sanders v. Russell, 401 F.2d 241 (5th Cir. 1968); In re Watkins, 271 F.2d 771 (5th Cir. 1959). Since we conclude that the issuance of the writ is in aid of our appellate jurisdiction in the more traditional sense, we do not rely upon a rationale of

an independent supervisory power as a basis for jurisdiction.

11. *See also* Harris v. Nelson, 394 U.S. 286, 89 S.Ct. 1082, 22 L.Ed.2d 281 (March 24, 1969).

District courts within the circuit are in conflict over the questions raised in this case, *see* United States v. Venn, 41 F.R.D. 540 (S.D.Fla.1966); United States v. I. G. Balfour Co., Crim. No. 2407 (N.D. Ga.1967), and the exercise of our "expository and supervisory functions" will limit further disparity. LaBuy v. Howes Leather Co., *supra;* Atlass v. Miner, 265 F.2d 312, 313 (7th Cir. 1959), aff'd 363 U.S. 641, 80 S.Ct. 1300, 4 L.Ed. 2d 1462 (1960). The trial of the present case and similar cases would be lengthy and expensive, causing a heavy burden on the litigants and a drain on judicial manpower. Finally, our sensitivity to the Sixth Amendment considerations is assuaged by the fact that, as noted above, the defendants in this case seek relief and are the only parties who could be benefited by review of these orders. Madison-Lewis, Inc. v. MacMahon, 299 F.2d 256 (2d Cir. 1962); *compare Will, supra;* In re *United States, supra.*

In holding that mandamus is appropriate, we issue the same caveat as the Supreme Court did in *Schlagenhauf.* The appropriateness of the writ in this particular instance is not to be construed as making mandamus appropriate in subsequent cases in which the principles of Rule 16 discovery set forth in this opinion are applied. Part of the extraordinary nature of what is before us is the compelling need to settle a new issue so that it can become only an ordinary issue.

### 2. Rule 16 Motions—Background

While authority construing the newly revised Rule 16 is as yet meager, two decades of debate over the expansion of criminal discovery provides a guide to its interpretation. The revision was prompted in large measure by "the expanding body of materials, judicial and otherwise, favoring disclosure in criminal cases analogous to the civil practice." Dennis v. United States, 384 U.S. 855, 870–871, 86 S.Ct. 1840, 1849, 16 L.Ed.2d 973, 984 (1966). In light of the movement toward liberal criminal discovery as advocated by the commentators [12] and successfully implemented in state courts,[13] we approach problems of construing the Rule with the "realization that disclosure, rather than suppression, of relevant materials ordinarily promotes the proper administration of criminal justice." Dennis v. United States, *supra.*

Revised Rule 16 represents a significant change in emphasis. Under the prior practice non-disclosure was the norm, and the defendant had to bear the burden of justifying discovery. *Cf.* Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 400, 79 S.Ct. 1237, 3 L.Ed.2d 1323, 1327 (1959). The revised Rule operates on the premise that "abuses [of discovery] are a matter of legitimate concern—they argue however not for wholesale prohibition of criminal discovery but for circumspection and for ap-

12. Brennan, The Criminal Prosecution: Sporting Event of Quest for Truth? 1963 Wash.U.L.Q. 279; Everett, Discovery in Criminal Cases—In Search of a Standard, 1964 Duke L.J. 477; Garber, The Growth of Criminal Discovery, 1 Crim.L.Q. 3 (1962); Goldstein, The State and the Accused: Balance of Advantage in Criminal Procedure, 69 Yale L.J. 1149 (1960); Krantz, Pretrial Discovery in Criminal Cases: A Necessity for Fair and Impartial Justice, 42 Neb. L.Rev. 127 (1962); Louisell, Criminal Discovery: Dilemma Real or Apparent? 49 Calif.L.Rev. 56 (1961); Orfield, Discovery and Inspection in Federal Criminal Procedure, 59 W.Va.L.Rev. 221 (1957); Rezneck, The New Federal Rules of Criminal Procedure, 54 Geo. L.J. 1276 (1966); Sherry, Grand Jury Minutes: The Unreasonable Rule of Secrecy, 48 Va.L.Rev. 668 (1962); Traynor, Ground Lost and Found in Criminal Discovery, 39 N.Y.U.L.Rev. 228 (1964); Symposium, Discovery in Federal Criminal Cases, 33 F.R.D. 47 (1963); Note, Developments in the Law—Discovery, 74 Harv.L.Rev. 940 (1961); Comment, Discovery By a Criminal Defendant of His Own Grand-Jury Testimony, 68 Colum. L.Rev. 310 (1968). Authorities are collected in Advisory Committee's Note, 18 U.S.C.A. Rule 16 (Supp.1969).

13. *See, e. g.* People v. Chapman, 52 Cal.2d 95, 338 P.2d 428; State v. Johnson, 28 N.J. 133, 145 A.2d 313 (1958); *see generally* Fletcher, Pretrial Discovery in State Criminal Cases, 12 Stan.L.Rev. 293 (1960).

propriate sanctions tailored to dealing with apprehended abuses in the particular case." Brennan, The Criminal Prosecution: Sporting Event or Quest for Truth? 1963 Wash.U.L.Q. 279, 292. Under the revised Rule when the defendant properly makes a claim for inspection under 16(a) (3) or (b), discovery normally will be granted unless special reasons exist justifying the preservation of secrecy. *See* United States v. Leighton, 265 F.Supp. 27, 39 (S.D.N.Y.1967). United States v. Federman, 41 F.R.D. 339 (S.D.N.Y.1967); W. Barron & A. Holtzoff, Federal Practice & Procedure, Rules Ed. § 2033, at 61 (Wright, ed.) (Supp. 1967); Rezneck, The New Federal Rules of Criminal Procedure, 54 Geo.L.J. 1276, 1277 (1966).

In this case the government has not presented any special circumstances justifying the restriction or denial of discovery. Therefore, the issue before us is whether the defendants put forward proper claims for disclosure under 16(a) (3) and (b).

### 3. The 16(a) (3) Motions

Under 16(a) (3) each defendant sought the recorded testimony given before the Los Angeles and Dallas grand juries [14] by named persons said to be employees and former employees of the corporate defendants at the time of giving such testimony.[15]

The court granted the motions of the corporate defendants insofar as they applied to present and former officers,[16] holding that the Rule's provision allowing discovery of "recorded testimony of the defendant before a grand jury" entitled the corporations as a matter of right to discover their officers' testimony.[17] Both the defendants and the government object to the court's ruling, the government claiming that it is too broad, the defendants that it is too narrow.[18]

The government's construction of Rule 16(a) (3) may be simply stated: the Rule applies only to natural persons, not to corporations—only the testimony of "the defendant" may be discovered, and officers and employees are not defendants but agents of the defendant. The distinction is emphasized by reference to 15 U.S.C.A. §§ 32 and 33 which provide that persons who testify before the grand jury are granted immunity from antitrust prosecution. Thus, the government points out, the officers and employees who testify not only are not defendants but cannot become defendants.

While the government's argument has the virtue of simplicity, it is misdirected. The revision of Rule 16 was designed to liberalize the prior discovery practice, not restrict it.[19] Moreover, categorization is not as simple as the government would have it. The cor-

---

14. The indictment returned by the Dallas grand jury related only to the Texas market. The investigation of the Los Angeles grand jury extended to areas other than Texas and Texas as well. The Los Angeles grand jury indictments named as defendants United and Earl but not Gifford-Hill-American. United, Earl, and other defendants pleaded *nolo contendere* and the court imposed fines.

15. Some of those whose testimony was sought were alleged by the government to be co-conspirators.

16. *See* note 6, *supra.*

17. Rule 16(a) (3) allows the defendant to discover his recorded testimony "before a grand jury." We conclude that under the circumstances of this case the trial court correctly held that the corporate

defendants' discovery rights under 16(a) (3) extended to testimony before both the Los Angeles and Dallas grand juries.

18. Each defendant also moved under Rule 16(a) (1) for any relevant written or recorded statements made by it (or him) within the possession, custody, or control of the government. None of the parties attack the court's rulings on these motions in the present case, consequently they are not before us.

19. The government's construction would foreclose the corporation from all discovery under the revised Rule 16(a) (3). Under the prior rule discovery was freely granted to corporate defendants. *See, e.g.,* Bowman Dairy Co. v. United States, 341 U.S. 214, 71 S.Ct. 675, 95 L.Ed. 879 (1951).

poration traditionally has occupied an anomalous place in criminal law.[20] Corporations can act only through human agents, and whether in a particular instance the corporation or the agent is acting is a question that may attain almost theological sublety.[21]

To bolster its restricted interpretation the government argues that because of the threat of economic reprisal after disclosure of their testimony officers and employees may be deterred from furnishing information to the government and from testifying truthfully if they appear as grand jury witnesses. But as Professor Calkins points out,

> A witness is not a confidential informant; he must consider his testimony subject to all the obligations of oath required in any judicial proceeding. In revealing damaging evidence before the grand jury, the witness must expect that such evidence will be disclosed at trial. Therefore, any hesitancy that a witness might have in divulging harmful evidence before the grand jury ordinarily would be based upon a fear of the eventual necessity of giving that same evidence in open court rather than the fear that, having once given such harmful evidence, his grand jury testimony might be divulged. Disclosure of the prior testimony will not unduly discourage free

statements by witnesses before the grand jury.

Calkins, Grand Jury Secrecy, 63 Mich.L. Rev. 455, 461 (1965).[22] To the extent that the danger does exist, it can be met by appropriate restrictions in the particular case rather than a denial of discovery in all cases. Indeed, Rule 16(e) was designed to deal with the very evils the government advances. The Advisory Committee's Note states:

> *Subdivision (e).* This subdivision gives the court authority to deny, restrict or defer discovery upon a sufficient showing. Control of the abuses of discovery is necessary if it is to be expanded in the fashion proposed in subdivisions (a) and (b). Among the considerations to be taken into account by the court will be the safety of witnesses and others, a particular danger of perjury or witness intimidation, * * * and the protection of business enterprises from economic reprisals * * *.

18 U.S.C.A. Rule 16 (Supp.1969).

Balanced against the possibility of employee coercion are weighty considerations favoring corporate discovery.[23] Restricting discovery is contrary to the supposition that disclosure rather than suppression is preferred. *See* Dennis v. United States, *supra.* The corporate defendant does not enjoy the privilege

---

20. *See, e.g.,* Fletcher, Corporations ch. 55 (rev. ed. 1961).

21. *See* Comment, Discovery by a Criminal Defendant of His Own Grand-Jury Testimony, *supra* note 12, at 325 (1968).

22. Existing laws against intimidating witnesses tend to limit dangers of economic reprisal. Also the presumption that the corporation will retaliate assumes that the corporation will desire its personnel not testify when in fact the corporation, presumed to be innocent of criminal conduct, may have no objection, or may even desire, that its personnel testify. *Cf.* Goldstein, *supra* note 12, at 1192–94. The supposition that the witness will not come forward or testify truthfully disregards the carrot of immunity offered by 15 U.S.C.A. §§ 32, 33 and the stick of perjury prosecution if he does not reveal the truth.

23. Mr. Justice Brennan points out that liberalized discovery can benefit the prosecution as well as the defense:

"And might not expanded discovery benefit the prosecution as well as the accused? ' If sharpening of the issues, exposure of untenable arguments and more efficient marshalling of the evidence result from discovery, doesn't the prosecution profit? For if voluntary disclosure to defense counsel often results in guilty pleas because defense counsel becomes convinced of the hopelessness of the client's cause, should not a rule authorizing criminal discovery in every case result in even more dispositions without trial? ' * * * What justifies our being so sure then that according criminal discovery to the accused will benefit only the accused at the expense of the state?"

Brennan, *supra* note 12, at 287–288.

against self-incrimination,[24] which has been described as the *quid pro quo* of limited discovery.[25] In preparing the government's case the prosecutor is able to use the grand jury as his own discovery device, with the subpoenaing of defense witnesses *achieving much of the effect of a full-fledged deposition procedure.* See Traynor, Ground Lost and Found in Criminal Discovery, 39 N.Y. U.L.Rev. 228, 231 (1964). Finally, the criminal prosecution of corporations, which frequently involves alleged violations of such statutes as the securities and antitrust acts, often resembles the most complex civil cases, necessitating a vigorous probing of the mass of detailed facts to seek out the truth.

Four district courts which have ruled on the question have agreed with the conclusion that corporate defendants are entitled to discovery under 16(a) (3). But they have differed over the question of whose testimony the corporation may discover. In the present case the testimony of officers and former officers was held discoverable.[26] In United States v. Aeroquip Corp., 41 F.R.D. 441 (E.D.Mich. 1966), discovery was granted of the testimony of officers and of corporate representatives who testified in response to subpoenas addressed to the corporation. The court in United States v. I. G. Balfour Co., Crim. No. 2407 (N.D.Ga.1967) allowed the corporation to reach the testimony of all officers, directors and managing agents. In United States v. Venn,

41 F.R.D. 540 (S.D.Fla.1966), the testimony of all officers, directors, agents, and employees, but not former employees, was held discoverable.[27]

In our view these decisions focus too sharply on categorizations of corporate spokesmen that are not necessarily related to considerations underlying a meaningful right of discovery. The significance of a witness' testimony to the inquiry into potential corporate criminal liability, and to the defense in preparing its case, does not depend upon organizational charts. What all the participants—parties, counsel, grand jury, and trial jury if there be one—want to ascertain is what the witness knows, whether it is competent, and what probative value it has on the issues. The non-officer may play a more significant role in the corporation's actions under inquiry than an officer.[28] If the door to Rule 16(a) (3) is to be open to corporations at all—and we are of the opinion that it must—its availability should not be based upon corporate titles. Similarly, the fact that a witness has terminated his connection with the corporation after the relevant events have occurred does not bear on the significance of his testimony.

In articulating limits for corporate discovery under Rule 16(a) (3) we bear in mind both theoretical considerations and practical limitations. The discovery rights of the corporation must be reasonably related to corporate activity.

24. Essgee Co. v. United States, 262 U.S. 151, 43 S.Ct. 514, 67 L.Ed. 917 (1923) ; Wilson v. United States, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911) ; Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906).

25. United States v. Garsson, 291 F. 646, 649 (S.D.N.Y.1923) (L. Hand, J.) ; *but see* Goldstein, *supra* note 12.

26. *See* note 6, *supra.*

27. As we pointed out in our prior opinion in this case, the decision in *Venn* was based on discretionary factors as well as the trial court's construction of Rule 16 (a) (3). 388 F.2d at 238–239.
In United States v. Socony Mobil Oil Co., Crim. No. 837 (D.Kan.1966) the

court granted the corporate defendant discovery of the testimony of a corporate employee alternatively under 16(a) (3) and 16(b).

28. The grand jury indictment in this case charged conspiracy to restrain trade in the Texas market. The non-officer employees to whose testimony access has been denied under the 16(a) (3) order include the general manager of Texas operations for United during the period covered by the indictment, a Texas salesman, superintendent, and office manager of United, United's chief estimator, and several of Gifford-Hill-American's salesmen, managers, and estimators.

Thus, the testimony of an employee that he saw a transaction on a public street on his day off should not be automatically discoverable by the corporate defendant. Similarly, a witness who had no connection with the corporation at the time the relevant events occurred should not be brought within the purview of 16(a) (3) by being put on the corporate payroll on the day that he testifies. On the other hand, limitations on the corporation's discovery rights must be practicably commensurate with the efficient utilization of the energies of counsel and the court. A test that necessitated a detailed inquiry by the trial judge into a voluminous record would not be satisfactory.[29]

█ We hold that under Rule 16(a) (3) the defendant corporations may discover the testimony of all present and former officers and employees concerning activities carried on, or knowledge acquired, within the scope of or reasonably relating to their employment.[30] In so holding, we reiterate that if circumstances exist justifying the denial, restriction, or deferral of discovery in the particular case, the government may seek appropriate orders under Rule 16(e). We also acknowledge that in those unusual cases where special circumstances pointing toward the denial or restriction of discovery exist, the determination of whether the interests of justice favor disclosure may necessitate a delicate balancing of opposing considerations, and appropriate deference will be accorded by this court to the trial judge's determinations. *See* Symposium, Discovery in Federal Criminal Cases, 33 F.R.D. 47, 65 (remarks of Mr. Justice Bren-

nan). Finally, we recognize that under the revised Rule the trial judge retains discretion in regulating such incidents of discovery as the time, place, and manner of disclosure so as to assure the orderly progress of litigation.

### 4. The 16(b) motions

Rule 16(b) discovery motions were filed by United and Earl and by Gifford-Hill-American seeking an order directing the government to permit them to inspect and copy or photograph all books, papers and documents in the possession, custody or control of the government relating to the subject matter of the indictment, including but not limited to documents submitted to the Los Angeles and Dallas grand juries by Weyerman and Greenway (former executives of United) and the transcripts of all testimony given before the Los Angeles and Dallas grand juries.

In support of their motions the defendants filed affidavits and lengthy memoranda detailing the bases of their requests. United and Earl stated that some of the documents submitted to the grand juries contained details of the various purported illegal agreements, and that, while they had duplicates of some of the documents, inspection of the originals was required to determine their authenticity. They stated that since Weyerman and Greenway had been named as co-conspirators under the Dallas indictment, their acts and declarations would be admissible against the defendants. Finally, they claimed a need for the Los Angeles grand jury transcript in order to prepare a possible defense of double jeopardy.[31]

---

29. For this reason we reject the test proposed in Comment, Discovery by a Criminal Defendant of His Own Grand Jury Testimony, *supra* note 12, at 329–333, that a corporate defendant be permitted to discovery "testimony given by any member or former member of the corporate organization, where the testimony concerns alleged conduct of that member for which the prosecution seeks to hold the defendant criminally responsible."

30. It is our view that the responsibility should be on the government to show that all or part of testimony sought falls outside these limits.

31. United and Earl contended that many of the witnesses who had testified before the Los Angeles grand jury subsequently testified before the Dallas grand jury, and that they needed the Los Angeles grand jury transcript to ascertain if the

Gifford-Hill-American's memorandum and supporting affidavit specified a need for the documents submitted by Weyerman and Greenway in order to discover the declarations of these two alleged co-conspirators, and a need for other documents submitted to the Dallas grand jury in order to authenticate documents in Gifford-Hill-American's possession.

The court granted both motions with respect to documents submitted by Weyerman and Greenway to the Los Angeles grand jury [32] and by all witnesses to the Dallas grand jury, "except that this Order does not authorize disclosure of such documents which are not material to proof of the conspiracy alleged in the indictment or which deal with collateral matters which may possibly arise at trial." [33] In other respects the motions were denied.

The government does not challenge the order insofar as it directs the production of documents submitted to the grand juries. But the defendants maintain that the trial judge erred in failing to make available all material documents in the government's possession and in restricting discovery, where granted, to items relevant to the proof of the conspiracy.

■ First we consider documents other than grand jury transcripts. Unlike Rule 16(a), Rule 16(b) imposes as a prerequisite to discovery the requirement that there be a showing of materiality to the preparation of the defense

and of reasonableness. Because the defendant cannot be expected to know the exact nature of what he has not yet seen, specific designation is not required. *See* Advisory Committee's Note, 18 U.S.C.A. Rule 16 (Supp.1969). If the documents in the possession of the government are voluminous the defendant need not lay a detailed foundation of materiality for each item. United States v. Fancher, 195 F.Supp. 448, 449, 450 (D.Conn.1961); United States v. Greater Blouse, Skirt & Neckware Contractors Ass'n, 177 F.Supp. 213 (S.D.N.Y.1959); *cf.* Bowman Dairy Co. v. United States, 341 U.S. 214, 71 S.Ct. 675, 95 L.Ed. 879 (1951). However, there must be a definite delineation of the subject matter sought. A blanket demand for "all material information in the possession of the government" does not suffice to establish materiality. *See* Barron & Holtzoff, *supra* at § 2033 (Supp.1967); Rezneck, *supra* at 1280; *cf.* People v. Cooper, 53 Cal. 2d 775, 770, 3 Cal.Rptr. 148, 157, 349 P.2d 964, 973 (1960); Louisell, Criminal Discovery; Dilemma Real or Apparent, 49 Calif.L.Rev. 56, 83–84 (1961).

■ The *shotgun motions* of the defendants did not comply with these requirements, and the trial judge did not err in refusing the defendants' requests for "all material documents." [34] However, the materiality that must be shown is materiality to the preparation of the defense, not materiality to proof of the conspiracy.[35] The court's order should

---

alleged Texas conspiracy was merely an extension of the conspiracy for which they already had been convicted.

32. By the court's order under Rule 6(e) the defendants have been granted access to the Los Angeles grand jury testimony of Weyerman and Greenway, as well as all officers of United and Gifford-Hill-American.

33. The order also exempted from disclosure internal government documents made by government agents in connection with the investigation or prosecution of the case and statements of government witnesses or prospective witnesses covered by the Jencks Act, 18 U.S.C.A. § 3500 (Supp.1969).

34. The defendants did attempt to delineate a need for the production of documents submitted to the Los Angeles grand jury by Wilson, a former United employee. However, the defendants have not contended that Wilson is an alleged co-conspirator and do not otherwise show sufficiently how his testimony would be material to the preparation of the defense. From the record before us we cannot conclude that the trial court erred in denying discovery of documents submitted by Wilson.

35. As Rezneck points out, the revised Rule "does not limit the defendant to discovering the case against him. It evidently contemplates that his discovery may en-

be modified to apply the correct materiality standard.

 We turn now to grand jury transcripts. The government's opposition to the defendants' discovery of grand jury transcripts rests primarily on the contention that Rule 16(b) does not apply to grand jury transcripts. The government says that revised Rule 16(b) is a restatement of former Rule 16,[36] under which grand jury transcripts were not discoverable. This disregards the fact that the old version of Rule 16, unlike the revised Rule, restricted discovery to items "obtained from or belonging to the defendant or obtained from others by seizure or by process." The government also argues that reading the discovery provisions of Rule 16 in conjunction with the provisions of Rule 6 relating to grand jury proceedings precludes grand jury

transcripts from discovery under 16(b). We find nothing on the face of either rule that commands this result.[37] Rule 16(b) permits the court to allow the defendant to inspect and copy "books, papers, documents, tangible objects, buildings or places * * *." Grand jury transcripts are "documents." *Cf.* Fryer v. United States, 93 U.S.App.D. C. 34, 207 F.2d 134, 136–137 (1953). Rule 6(e) prohibits the disclosure of grand jury transcripts except by order of the court, but its provisions do not delimit when such orders should or should not be made in discovery proceedings.[38]

 Finally, the government urges that the requirement of "particularized need" as enunciated in cases construing Rule 6(e) prior to the amendment of Rule 16[39] is an implied limitation on a

---

compass a search for evidence which he may use to support his own case or to impeach the government's." Rezneck, *supra* note 12, at 1279. *See also* United States v. Greater Blouse, Skirt & Neckware Contractors Ass'n, 177 F.Supp. 213 (S.D.N.Y.1959).

36. The former version of Rule 16 provided:

"Upon motion of a defendant at any time after the filing of the indictment or information, the court may order the attorney for the government to permit the defendant to inspect and copy or photograph designated books, papers, documents or tangible objects, obtained from or belonging to the defendant or obtained from others by seizure or by process, upon a showing that the items sought may be material to the preparation of his defense and that the request is reasonable. The order shall specify the time, place and manner of making the inspection and of taking the copies or photographs and may prescribe such terms and conditions as are just."

37. The government maintains that the caption of Rule 16(b), which indicates that the subdivision applies to "*other* Books, Papers, Documents, Tangible Objects or Places," suggests that 16(b) applies to documents other than grand jury transcripts, which are dealt with in 16 (a) (3). However it is more in keeping with the language of 16(a) (3) to read the caption of 16(b) as meaning "other than the grand jury testimony *of the defendant.*"

38. "*Rule 6. The Grand Jury.*

\* \* \* \* \*

"(e) *Secrecy of Proceedings and Disclosure.* Disclosure of matters occurring before the grand jury other than its deliberations and the vote of any juror may be made to the attorneys for the government for use in the performance of their duties. Otherwise a juror, attorney, interpreter, stenographer, operator of a recording device, or any typist who transcribes recorded testimony may disclose matters occurring before the grand jury only when so directed by the court preliminarily to or in connection with a judicial proceeding or when permitted by the court at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury. No obligation of secrecy may be imposed upon any person except in accordance with this rule. The court may direct that an indictment shall be kept secret until the defendant is in custody or has given bail, and in that event the clerk shall seal the indictment and no person shall disclose the finding of the indictment except when necessary for the issuance and execution of a warrant or summons."

39. *See* Dennis v. United States, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973

defendant's discovery rights under Rule 16. However, the draftsmen of the revised Rule were careful to make exceptions to its otherwise all-inclusive provisions for items subject to discovery under the Jencks Act and for internal government reports and memoranda. It is improbable that an exception to Rule 16(b) for the statutory discovery provisions of the Jencks Act would be specifically mentioned while an exception for the judicially developed doctrine under Rule 6(e) of discovery based on particularized need would be included only by implication. The government emphasizes strongly the "long established policy that maintains the secrecy of the grand jury proceedings in the federal courts." United States v. Procter & Gamble Co., 356 U.S. 677, 681, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077, 1081 (1958).[40] Access to grand jury transcripts, like all discovery in criminal cases, traditionally has been restricted,[41] but there has been a growing tendency to limit secrecy after the grand jury has completed its work to those cases where secrecy serves legitimate policy considerations. *See* Dennis v. United

States, *supra*; United States v. Young-blood, *supra*; Calkins, *supra*, Sherry, Grand Jury Minutes; The Unreasonable Rule of Secrecy, 48 Va.L.Rev. 668 (1962).[42]

Factors arguing for secrecy[43] do not necessitate the restrictive construction of Rule 16(b) urged by the government. The prevention of accused's arrest is not a consideration at the pre-trial discovery stage. Protection of individuals not indicted is a limited problem at pre-trial —if no indictment is returned there is no disclosure, and if some persons are indicted and some are not testimony concerning persons not indicted can be deleted if not material to preparation of the defense. The dangers arising from possible intimidation of witnesses have been discussed in an earlier section of this opinion. *See* text at note 22, *supra.* Discovery need not compromise the grand jury's deliberative process, since the deliberations and notes of the grand jury, as opposed to testimony, may not be material and if material may be the subject of protective orders where appropriate.[44]

(1966); Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959); United States v. Procter & Gamble Co., 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958).

40. On discovery of grand jury documents in civil antitrust cases, *see* State of Illinois v. Harper & Row, Publishers, Inc., Civil No. 67C1899 (N.D.Ill., 1968), petition for writ of mandamus refused sub nom. Harper & Row Publishers, Inc. v. Decker, 7th Cir., 1969, F.2d [No. 17320, January 9, 1969], cert. denied 394 U.S. 944, 89 S.Ct. 1273, 22 L.Ed.2d 478 (April 1, 1969), holding that plaintiffs in a treble damage suit may discover grand jury documents under Fed.R.Civ.P. 34 upon alleging relevance and materiality, rather than particularized need.

41. Between the adoption of Fed.R.Crim.P. 6(e) in 1946 and the July 1, 1966 amendment of Rule 16, discovery of grand jury transcripts was more readily available than discovery of most other items. Under 6(e), discovery of grand jury transcripts was granted whenever "particularized need" was shown. *See* Dennis

v. United States, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966); Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959). The only other provisions allowing discovery applied in the narrow circumstances specified in the Jencks Act, 18 U.S.C.A. § 3500 (Supp.1969) and in former Rule 16. *See* note 36, *supra.*

42. Some states have gone so far as to eliminate post-indictment grand jury secrecy altogether. *See* Cal.Pen.Code § 938.1 (West Supp.1967); Iowa Code Ann. § 772.4 (1950); Ky.R.Crim.P. 5.16 (1964); Minn.Stat.Ann. § 628.04 (1947); ch. 196, § 95–1406(e), [1967] Mont. Laws, p. 395; Okla.Stat.Ann. tit. 22, § 340 (Supp.1967).

43. *See, e.g.*, Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 405, 79 S.Ct. 1237, 3 L.Ed.2d 1323, 1330 (1959) (Brennan, J.) (dissenting opinion). United States v. Youngblood, 379 F.2d 365, 370 n. 3 (2d Cir. 1967).

44. Moreover Rule 6(e) suggests that the grand jury's deliberations and the vote of any juror are not subject to discovery. *See* note 38, *supra.*

In circumstances where nondisclosure serves legitimate ends, the judge is allowed under 16(e) to deny, restrict, or defer discovery and the government is permitted to seek appropriate restrictive orders. Only where secrecy does not serve legitimate, overriding purposes is discovery of grand jury transcripts mandated by the Rule. Moreover, in cases where disclosure of grand jury transcripts to the defendant is appropriate, discovery need not be a one-way street, for Rule 16(c) authorizes the court to condition its discovery order in favor of the defendant on the defendant's allowing the government access to items material to the preparation of the government's case.[45]

 Turning to the present case, discovery to ascertain the existence of double jeopardy fits well within the Rule 16(b) requirement of materiality to the preparation of the defense. According to the defendants' allegations, the Los Angeles grand jury has completed its work, therefore production of its transcript in the Texas District Court would not appear unreasonable.[46] Unless the government shows that the information regarding possible double jeopardy can be obtained from other sources,[47] or that portions of the grand jury transcripts do not bear on the double jeopardy issue, or that a denial, restriction, or deferral of discovery of all or part of the transcripts is otherwise appropriate, United and Earl's motion for the production of grand jury transcripts should be granted.[48]

5.

The defendants' petitions for writs of mandamus are granted. The defendants are entitled to be allowed the discovery sought by them to the extent provided by this opinion.[49] However, the government may, if it desires, present to the district judge appropriate motions under Rule 16(c) and 16(e).

Writ granted.

45. *"Rule 16. Discovery and Inspection.*
 *"(c) Discovery by the Government.* If the court grants relief sought by the defendant under subdivision (a)(2) or subdivision (b) of this rule, it may, upon motion of the government, condition its order by requiring that the defendant permit the government to inspect and copy or photograph scientific or medical reports, books, papers, documents, tangible objects, or copies or portions thereof, which the defendant intends to produce at the trial and which are within his possession, custody or control, upon a showing of materiality to the preparation of the govment's case and that the request is reasonable. Except as to scientific or medical reports, this subdivision does not authorize the discovery or inspection of reports, memoranda, or other internal defense documents made by the defendant, or his attorneys or agents in connection with the investigation or defense of the case, or of statements made by the defendant, or by government or defense witnesses, or by prospective government or defense witnesses, to the defendant, his agents or attorneys."

46. The prior discovery orders by Judge Hughes relating to the Los Angeles grand jury transcript have been conditioned upon the approval of the United States District Court for the Southern District of California. Similar conditions in future discovery orders are, of course, appropriate.

47. *See* Rezneck, *supra* note 12, at 1220: "A request for items material to the preparation of the defense would ordinarily be reasonable unless, for example, the defendant already had some access to the matters sought."

48. Gifford-Hill-American does not contend that it faces double jeopardy, and it has not otherwise shown a need for the production of the transcript.

49. The defendants complain that the trial court's discovery orders are unclear in several respects. We do not deal with these contentions in this mandamus proceeding. If the orders are unclear, the defendants can seek clarification from the district court.