UNITED STATES of America

v.

AMERICAN RADIATOR & STANDARD SANITARY CORPORATION et al.

UNITED STATES of America

v.

PLUMBING FIXTURE MANUFACTURERS ASSOCIATION et al.

Cr. Nos. 66–295, 66–296.

United States District Court
W. D. Pennsylvania.

Aug. 16, 1967.

See also D.C., 272 F.Supp. 691.

Hubert I. Teitlebaum, Pittsburgh, Pa., for American Radiator & Standard Sanitary Corp.

Malcolm Anderson, Pittsburgh, Pa., for Wallace-Murray Corp.

T. W. Pomeroy, Jr., W. Walter Braham, Jr., Pittsburgh, Pa., for Plumbing Fixture Mfrs. Assn.

Paul J. Winschel, J. T. Fort, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for Kohler Co.

Harold R. Schmidt, Pittsburgh, Pa., for Crane Co.

Malcolm Anderson, Pittsburgh, Pa., Fred A. Freund, New York City, for John B. Balmer.

Frank L. Seamans, Pittsburgh, Pa., for Joseph J. Decker, Daniel J. Quinn, and Lawndale Industries, Inc.

Alexander Unkovic, Pittsburgh, Pa., for Norman R. Held.

John D. Ray, Ray & Good, Beaver, Pa., for Robert E. Casner.

James A. Bell, Thorp, Reed & Armstrong, Pittsburgh, Pa., for Universal-Rundle Corp.

J. Robert Maxwell, Pittsburgh, Pa., for Stanley Backner.

Thomas M. Kerr, Jr., Pittsburgh, Pa., for Robert J. Pierson, Jr.

J. Craig Kuhn, Pittsburgh, Pa., for George W. Kelch.

Elliott W. Finkel, Pittsburgh, Pa., for Gerber Plumbing Fixtures Corp.

David J. Armstrong, Pittsburgh, Pa., for Rheem Mfg. Co.

Clayton A. Sweeney, Pittsburgh, Pa., for Borg-Warner Corp.

Maurice Wechsler, Pittsburgh, Pa., O'Brien, Driscoll & Raftery, New York City, for Briggs Manufacturing Co.

J. Vincent Burke, Pittsburgh, Pa., for Ogden Corp.

Eugene B. Strassburger, Pittsburgh, Pa., for Mansfield Sanitary, Inc.

William J. Kenney, Pittsburgh, Pa., for Kilgore Ceramics Corp.

Harry W. Miller, Pittsburgh, Pa., for Georgia Sanitary Pottery, Inc.

Robert Wayman, Pittsburgh, Pa., for Peerless Pottery, Inc.

Harold E. Kohn, Aaron Fine, and David Berger, Philadelphia, Pa., for intervenors.

John C. Fricano, Antitrust Division, U. S. Department of Justice, Washington, D. C., Gustave Diamond, U. S. Atty., Thomas Daley, Asst. U. S. Atty., Pittsburgh, Pa., for the United States.

## OPINION

ROSENBERG, District Judge.

Requests are here considered, as they were incorporated in joint motions to dismiss the indictments and to suppress evidence in the above entitled cases, for the hearing *en camera* of "any evidence, arguments or other proceedings in connection therewith" and for the impounding of the records thereof. These requests were collateral to motions as filed by the defendants for pretrial procedure [1] pursuant to Federal Rule of Criminal Procedure 17.1, not as it was suggested by defendants' counsel as they relate to the entire proceedings, but only so far as they relate to "discovery and bills of particulars or the equivalent thereof" and as they were to be made available *en camera*.

After an extensive grand jury investigation into certain activities of plumbing manufacturers throughout the United States a grand jury at Pittsburgh, Pennsylvania, on October 6, 1966, presented two indictments, charging antitrust violations, against the named defendants. The first indictment at Criminal No. 66–295 charges eight corporate defendants, a trade association and eight individual defendants, with engaging in a conspiracy, in violation of Section 1 of the Act of Congress of July 2, 1890, commonly known as the Sherman Act. The indictment charges, in substance, that

---

[1] Actually the defendants had urged at prior conferences that pretrial conferences be set up so as to line up what seemed to be pretrial processes similar to that used here in civil actions for the formulating of motions and hearing of evidence on all matters necessary to test the prosecution's supports, preliminarily. This the Government proposed, arguing that the defendants should be required to file, as previously ordered, specific separate motions on all matters as ordered.

the defendants conspired to fix the prices of enameled cast iron and vitreous china plumbing fixtures beginning sometime in September 1962 and continuing at least until sometime in 1966. The second indictment at Criminal No. 66–296 charges ten corporate defendants and their trade association with engaging in a conspiracy in violation of Section 1 of the Sherman Act, in that such defendants conspired to fix the prices of staple vitreous and china plumbing fixtures beginning in November 1960 and continuing to June 1962.

On November 15, 1966, at the arraignment, all the defendants pleaded not guilty. Counsel had met several times informally both in Pittsburgh and Washington to attempt to agree upon a course of action, and reported that they had arrived at no agreement. Thereafter time for the filing of preliminary motions was allowed the defendants. The defendants in each case then filed joint motions to dismiss the indictment, to suppress evidence, and for pretrial. Four separate motions to dismiss were also filed by three individual defendants and one corporate defendant.

On May 22, 1967, an *en camera* hearing was had to determine the necessity for *en camera* proceedings on the motions to dismiss and to suppress evidence. At the argument as verified by the order of May 23, 1967, counsel for the parties were directed to file affidavits, setting forth the facts upon which the parties relied to support their positions for and against an *en camera* hearing.

The defendants' reasons for *en camera* hearing as stated in their joint motions was "in order to preserve the defendants' rights pending the determination of the motion and to assure the defendants a fair trial if the motion should be denied." They contended that "Anything other than in camera treatment of the pretrial proceedings involving the Motions to Dismiss and Suppress would, in effect, deny the defendants Constitutional rights by placing upon the public

record the complete background concerning the very material, the illicit creating and obtaining and the subsequent use and divulgence of which within the confines of the Grand Jury room, constitutes the error which is protested in the Motion."

Both parties cite the Sixth Amendment which states:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining Witnesses in his favor; and to have the Assistance of Counsel for his defense."

The Government contends that the provisions of the Sixth Amendment which guarantees to an accused "the right to a speedy and public trial" reflects a basic premise in American law that all significant portions of the criminal trial should be in open court.

The defendants, on the other hand, contend that they may waive their constitutional rights to a public hearing,[2] particularly pretrial hearings and thus be granted a private trial, or in any event a private pretrial proceeding or hearing on their motions to suppress evidence.

First, to allow a private pretrial proceeding or hearing on the joint motions in this case would set a precedent for all other criminal cases of whatever nature. No one will argue that a criminal defendant is under pressure and tension; that he is frequently the object of publicity; and that he may be humiliated and sometimes disgraced or even stigmatized. The individual, man or woman, charged with crime may suffer from this in his immediate neighborhood or his everyday social life and employment.

---

2. The defendants have here filed waivers of the right to public trial in order to further their positions on the *en camera* requests made.

The businessman, additionally, often feels the effects in his business. Yet every day in our criminal courts, large numbers of persons stand charged with crimes of every kind. It is difficult to visualize a criminal processing by which all of these could waive their rights to a public trial, or even pretrial, and be tried privately. This does not mean that certain features in criminal proceedings may not be closed against the inquisitive, or that even, at times, the public generally may not be excluded from the courtroom. Such exclusion, for instance, is permissible where there are juvenile court matters, divorce proceedings, or certain crimes of sexual perversion. Wigmore, Evidence, § 1835.

If reputations of the parties are at stake, as they maintain here, so are the reputations of every other defendant in every other criminal case. And if they are exonerated, either by suppression of evidence or by any other legal occurrence, then their position is no different from any other exonerated defendant. Thus, I do not see that because a group of defendants is charged with antitrust violations and finds itself open to possible publicity, as it may be to conviction and other penalties, it is to be preferred to defendants in criminal cases generally.

I do not recognize the defendants' contention that a waiver of public hearing requires the action they request. The argument of the defendants that they have a right to waive a public hearing and demand a private hearing reflects an absurdity equal to the interpretation that the defendants have a right to waive a speedy trial, and so convert the word "speedy" in the Sixth Amendment to mean "protracted". The Amendment reads "speedy and public" not "protracted and private". Under such circumstances as argued by the defendants, all criminal charges could be defeated, and chaos would result. We cannot and do not make any absurd construction of the meaning of the words of the Constitution. It has been held that the trial by jury provided for in the Sixth Amendment does not mean that a defendant may waive the trial by jury without court approval. Singer v. United States, 380 U.S. 24, 85 S.Ct. 783, 13 L.Ed.2d 630 (1964); Patton v. United States, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854 (1930).

While the Sixth Amendment does specify certain rights for the accused including his right to a public trial, it does not preserve to him a right to a private trial. In Singer v. United States, supra, 380 U.S.,[3] at pages 34–35, 85 S.Ct. at page 790, Chief Justice Warren stated:

> "The ability to waive a constitutional right does not ordinarily carry with it the right to insist upon the opposite of that right. For example, although a defendant can, under some circumstances, waive his constitutional right to a public trial, he has no absolute right to compel a private trial, see United States v. Kobli, 172 F.2d 919, 924 (3d. Cir. 1949) * * *."

The Constitution specifically grants public protective rights to a criminal defendant so that he may not be subjected to "Star Chamber" proceedings. While, under appropriate circumstances, this right may be waived, Singer v. United States, supra, the occasion for a private hearing generally includes a consideration of the public's interest as well as the defendant's. It thus becomes a matter for judicial discretion to make a determination that a case or any part of it is to be *en camera*. *En camera* hearings, as opposed to public hearings, are thus an exception to the general rule.

Private judicial proceedings are basically foreign to the concept of American jurisprudence. The guarantee to the accused for a public trial is a safeguard against any attempt to employ courts as instruments of persecution. The general knowledge that every criminal trial is subject to contempo-

---

3. In Singer, the defendant was insisting on an absolute right to a trial before the judge alone and not before a jury.

raneous review in the form of public opinion, is an effective restraint on possible abuse of judicial power. In re Oliver, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948).

In the *Oliver* case, supra, Mr. Justice Black said at page 266, 68 S.Ct. at page 504:

"Counsel have not cited and we have been unable to find a single instance of a criminal trial conducted in camera in any federal, state, or municipal court during the history of this country. Nor have we found any record of even one such secret criminal trial in England since abolition of the Court of Star Chamber in 1641 * * *."

And at pages 268–269, 68 S.Ct. at page 505:

"The traditional Anglo-American distrust for secret trials has been variously ascribed to the notorious use of the practice by the Spanish Inquisition, to the excesses of the English Court of Star Chamber, and to the French monarchy's abuse of the *lettre de cachet*. All of these institutions obviously symbolized a menace to liberty. * * *"

The public notice of a judicial proceeding tends to improve the quality of testimony, first, by producing in a witness' mind a disinclination to falsify, and second, by securing the presence of other non-parties who may be able to furnish testimony to contradict falsifiers. These two sets of reasons have often been expounded as justifying and demanding the traditional common-law practice of holding trial with open doors.

Blackstone commented on this matter in 1768, Commentaries III, 373:

"This open examination of the witnesses, 'viva voce', in the presence of all mankind, is much more conducive to the clearing up of truth than the private and secret examination taken down before an officer or his clerk, in the ecclesiastical courts and all others that have borrowed their practice from the civil law; where a witness may frequently depose that in private which he will be ashamed to testify in a public and solemn tribunal."

Other reasons, independent of evidential service, for proceeding publicly rather than privately in the law are (1) the participants, judge, jury and counsel, are moved to stricter conscientiousness in the performance of their duties; (2) persons not parties to the action may be affected by pending litigation and have a right to know what is going on; and (3) public attendance has an educative effect which can increase respect for law and provide confidence in judicial remedies.[4]

These principles are expressed in the decisions of the courts. For example, that public and speedy trial with other constitutional requirements are for the protection of the public generally, as well as privileges accorded to individual members of the public accused of crime, was stated in United States v. Sorrentino, 175 F.2d 721, cert. den. 338 U.S. 868, 70 S.Ct. 143, 94 L.Ed. 532, rehearing den. 338 U.S. 896, 70 S.Ct. 238, 94 L.Ed. 551. In United States v. Kolbi, 172 F.2d 919, 3 Cir., 1949, it was stated that the knowledge that every criminal trial is subject to contemporaneous review in the form of public opinion serves as an effective restraint on possible abuse of judicial power. In United States v. Consolidated Laundries, 266 F.2d 941, 2 Cir., 1959, the Court of Appeals for the Second Circuit added this concerning secret proceedings:

"In general it appears to be sound public policy to avoid secret judicial proceedings in the course of a trial so far as possible; it will promote confidence merely to avoid the suspicions which always attend secrecy. [Id. at 942.]"

The defendants rely on the Sixth Amendment in yet another contextual direction—that an *en camera* hearing is required in order to insure the "impartial jury" provided by that Amendment.

4. Wigmore, Evidence, § 1834.

They argue that widespread publicity of the hearing on the motions to suppress evidence may handicap the defendant, and that it will be impossible or, at least, extremely difficult to empanel a jury.

Criminal cases are more likely to be publicized than are civil cases. Some criminal cases have greater publicity potentials with more resulting damages than could possibly occur in these cases. Yet the defendants are not necessarily, for such reasons, entitled to private hearings. Antitrust actions are in the class of cases which are matters for public concern and they ought not to be shut away from the public view. Congress has provided that persons injured by antitrust violations may bring treble damage actions. It has further provided that these persons are entitled to introduce in their cases, as prima facie evidence, certain matters resulting from Government actions. 15 U.S.C. § 16(a). Under these circumstances, it would seem that any secrecy tending to conceal, screen or obscure evidence of any antitrust violations in criminal actions would be inconsistent with what appears as Congressional public policy.[5]

The defendants also argue that jurors who will not have been prejudiced by publicity may not be available at the ultimate trial on the guilt or innocence of the defendants. This is not persuasive here. The United States District Court for the Western District of Pennsylvania has jurisdiction in twenty-five counties with an approximate population of 4,-286,245.[6] Thus, we have a vast resource for the calling of jurors. While we may be called upon to spend more time in voir dire selection of jurors for the eventual trials, we shall not be handicapped by an insufficient number of available candidates for the jury's selection and who are eligible to serve according to law.

The First Amendment provides as follows:

"Congress shall make no law * * * abridging the freedom of speech, or of the press * * *."

Thus, there is a constitutional direction for me hereby which I cannot foreclose proper and orderly publicity in matters of public interest. The Supreme Court has also spoken in this regard and has defined the available controls. In that connection, Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966), gives strong cautions to trial judges. At page 362, 86 S.Ct. at page 1522, the Court stated:

"From the cases coming here we note that unfair and prejudicial news comment on pending trials has become increasingly prevalent. Due process requires that the accused receive a trial by an impartial jury free from outside influences. Given the pervasiveness of modern communications and the difficulty of effacing prejudicial publicity from the minds of the jurors, the trial courts must take strong measures to ensure that the balance is never weighed against the accused. And appellate tribunals have the duty to make an independent evaluation of the circumstances."

In Estes v. State of Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965), Chief Justice Warren pointed out in his concurring opinion, 384 U.S. at page 381, 86 S.Ct. 1507, that the function of the trial court is to conduct the whole proceedings—trial and pretrial— in an atmosphere of dignity and integrity, so as to shield the trial process itself from external factors.

■ There may be circumstances where it would be appropriate, as previously stated, to provide for en camera processing or trial, where public concern is a lesser factor than is the pos-

5. Of related interest is § 30 of 15 U.S.C. dealing with taking of depositions in suits in equity brought by the United States to prevent unlawful monopolies and combinations. It provides: " * * * the proceedings shall be open to the public

as freely as are trials in open court; and no order excluding the public from attendance on any such proceedings shall be valid or enforceable."

6. This population figure is based upon the last decennial census, 1960.

sible, prejudicial damage resulting to specific persons either as criminal defendants or witnesses, by public hearing at trial or even pretrial.

In order to determine whether it was necessary to have an *en camera* hearing on the defendants' motions, the parties were directed to file affidavits containing the facts as they might be presented at the hearing. The Government had offered in open court to divulge all the facts upon which it relied and this it agreed to do in the form of affidavits. The defendants were accordingly given the right to dispute, deny or otherwise present facts which would show that there was a need for a hearing nevertheless. Following this direction, the Government filed four affidavits. One of these was supported by oath of the Assistant United States Attorney. This set forth the method and means used for the procurement of the evidence upon which the charges in the indictments are based, as it concerned the evidence sought to be suppressed. The other three affidavits were personal affidavits and were supported by the oath of individuals who presumably will be evidentiary witnesses at the trial of the case on the facts as they necessarily will be required to support the convictions on the charges contained in the indictments, and as regards the evidence sought to be suppressed.

The defendants, on the other hand, submitted a joint affidavit supported by oath of counsel representing the parties, which was based upon information and belief of matters they intended to rely upon in furthering their motions for the suppression of evidence. As these affidavits were presented they revealed no issue of fact which would require any hearing thereon. After a thorough examination of all the affidavits and arriving at the conclusion that these affidavits presented no issues which should be heard, I, nevertheless, gave the defendants an additional opportunity to present personal affidavits of factual matters which might show the need for a hearing. These affidavits

were to be filed no later than August 14, 1967. In accordance with the order, the defendants did file five affidavits. One of these was from a lawyer, one from an office secretary of the association, and the remaining three were from officers of three corporate defendants, one of whom was a member of the executive committee of the association.

In the composite of all of these affidavits there was a certain amount of dispute and negative assertions which, even if taken as true, present no substantial evidence that issues of fact exist requiring a hearing. These affidavits also present conclusory opinions which relate to the legal aspects of the cases rather than to issues of fact. Therefore, they are, as such, properly presentable as objections or reasons at the legal argument for the suppression of evidence. Accordingly, I find that from all of the contents of the affidavits as filed, no real issue of fact exists as to the circumstances by which the Government obtained evidence which is sought to be suppressed here by the present motions of the defendants.

Is the evidence as revealed by the affidavits and briefs of the defendants of such a character that it ought to be hidden from the view of the public? In this consideration we have already discussed the character of cases which may require private hearings or the exclusion of parts of the public. None of these reasons appear here.

■ The question here on the motions to suppress concerns itself, in essence, with whether the Government has behaved properly, not with whether the defendants are guilty of the charges against them. I am not persuaded, either, that the holding of a public argument at this time on the motion for suppression of evidence would in any way provide such public information as to prejudice the minds of potential jurors or to prejudice the eventual trial concerning the guilt or innocence of the defendants.

■ For the reasons here stated the request for *en camera* treatment of the

motions will be denied, with certain rights, however, in any aggrieved person to bring in the future special matters to the Court's attention requiring special treatment.

The determination as here made is not to be considered in any way as determining the granting or denying of the motions for the suppression of evidence or of the motions to dismiss as made, either jointly or individually in these cases.

There have been complaints that certain publicity has been unduly advanced by persons aligned with one or the other side, and requests were made that the parties be directed not to seek extra-judicial and undue publicity. In this regard I can only assert that all counsel who have appeared before me are competent, reputable and professionally oriented lawyers. I feel confident that they will conduct themselves on a highly ethical level.

The required order has already been entered of record.