**UNITED STATES of America,
Plaintiff,**

v.

**GENERAL MOTORS CORPORATION
and Ford Motor Company,
Defendants.**

**Crim. A. No. 47140.**

United States District Court,
E. D. Michigan, S. D.

Jan. 17, 1973.

Dwight B. Moore, Robert M. Dixon, Carl L. Steinhouse, Gerald H. Rubin, Attys., Dept. of Justice, Cleveland, Ohio, for the Government.

Nathan B. Goodnow, Dykema, Gossett, Spencer, Goodnow & Trigg, Detroit, Mich., Robert A. Nitschke, General Motors Corp., Detroit, Mich., Fred H. Bartlit, Jr., Kirkland & Ellis, Chicago, Ill., for General Motors Corp.

George E. Brand, Jr., Butzel, Long, Gust, Klein & Van Zile, Detroit, Mich., Robert W. Scott, Dearborn, Mich., William Piel, Jr., Sullivan & Cromwell, New York City, for Ford Motor Co.

## MEMORANDUM OPINION

FEIKENS, District Judge.

Defendants, General Motors Corporation and Ford Motor Company, were indicted May 1, 1972, for violation of Sections 1 and 2 of the Sherman Antitrust Act (15 U.S.C. §§ 1 and 2). On July 21, 1972, defendants requested a definitive bill of particulars. Subject to minor modifications, the court granted that request, and accordingly, on January 2, 1973, the Government filed a 264-page bill of particulars together with a substantial number of documents.

Defendants now seek an order suppressing the bill of particulars.

Defendants say their motion for suppression should be granted for three principal reasons: First, the secrecy of the grand jury will be violated by public disclosure of materials which were originally before that body; second, numerous unindicted prominent persons named in the bill will be subjected to adverse publicity and embarrassment; and third, defendants' Sixth Amendment right to a fair and impartial jury will be jeopardized by pre-trial publicity.

Defendants cite as primary authority for the scope of grand jury secrecy, Hammond v. Brown, 323 F.Supp. 326 (N.D. Ohio 1971), aff'd, 450 F.2d 480 (6th Cir. 1971). In that case, Judge Thomas ordered physical destruction and expungement of a state grand jury report. That is certainly not the relief sought here nor are the facts in that case reasonably analogous to those at bar. In Hammond, supra, the court expressly found the grand jury report deprived unindicted persons "of rights guaranteed under the Constitution. . . ." (323 F.Supp. 350). Moreover, the report in question "under Ohio law [was] issued illegally and without lawful authority." (323 F.Supp. 346).

■ This court is not convinced that simply because the bill makes use of materials once before a grand jury it follows that the issue of grand jury secrecy is presented when a bill of particulars is filed. In Re Hearings Before Committee on Banking and Currency of United States Senate, 19 F.R.D. 410 (N.D.Ill. 1956). The definitive specifications of charges in this bill of particulars do not violate principles of grand jury secrecy. In any event, in large part the secrecy of a grand jury ends when it returns an indictment and is then discharged.

■ Defendants also contend that the interests of numerous unindicted individuals named in the bill require that they be free from embarrassing publicity. Language from Hammond, supra, is cited for this proposition. A threshold question is whether significantly adverse publicity will occur. Defendants' argument contains a large element of speculation. That point aside, however, the question

is not whether unindicted persons have some interest in the public disclosure of a bill of particulars in which they are named, but whether their interests justify the relief sought here. The court thinks not.

In United States v. American Radiator and Standard Sanitary Corp., 274 F. Supp. 790 (W.D.Pa.1967), the trial judge was faced with requests by numerous antitrust defendants—both corporate and individual—to suppress a bill of particulars. The court said, at 792–793:

> "No one will argue that a criminal defendant is under pressure and tension; that he is frequently the object of publicity; and that he may be humiliated and sometimes disgraced or even stigmatized. The individual, man or woman, charged with crime may suffer from this in his immediate neighborhood or his everyday social life and employment. The businessman, additionally, often feels the effects in his business. . . .
>
> "If reputations of the parties are at stake, as [defendants] maintain here, so are the reputations of every other defendant in every other criminal case. . . . Thus, I do not see that because a group of defendants is charged with antitrust violations and finds itself open to possible publicity, as it may be to conviction and other penalties, it is to be preferred to defendants in criminal cases generally."

While that language refers to persons actually indicted, it has application to the unindicted individuals referred to in the bill here involved. They are the employees of defendants and other corporations referred to as co-conspirators with defendants. In the typical criminal case which involves a bill of particulars, unindicted third persons are routinely mentioned. This court in this case will not adopt a different standard of treatment for the prominent people named in this bill. Quoting the court in *American Radiator, supra,* this court "do[es] not see that because a group of defendants is charged with antitrust violations

. . . it is to be preferred to defendants in criminal cases generally."

Defendants also urge that a Sixth Amendment right to a fair and impartial jury will be impaired by pre-trial publicity. Estes v. Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965), and Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1963), cited by defendants, are not on point. *Estes* involved a case where part of the pre-trial proceedings and the trial were televised. There was extensive coverage in the print media and "a bombardment of the community with . . . sights and sounds." (381 U.S. 538, 85 S.Ct. 1630). In *Sheppard,* the Court noted that "a swarm of reporters and photographers attended." (384 U.S. 339, 86 S.Ct. 1510). The first row of the courtroom was occupied by representatives of television and radio stations, and the second and third rows by reporters of out-of-town newspapers and magazines. The opinion of the Court characterized the proceedings as a "carnival atmosphere." (358, 86 S.Ct. 1507).

The situation in this case is different. There were at the hearing on the present motion, at most, four or five representatives of the media. The only press reports on this case have been fair and responsible.

The defendants have made no showing that they cannot receive a fair trial from an impartial jury. *Sheppard, supra* at 384 U.S. 362, 86 S.Ct. 1507. Nor have they demonstrated that release of the bill of particulars, per se, would even *possibly* preclude a fair and impartial jury. The pervasive publicity which existed in *Estes* and *Sheppard* is not present here.

This court is being asked to assume that the publication of information contained in the bill of particulars will deprive defendants of a trial by a fair and impartial jury. The court will not make that assumption. Cf. Bridges v. California, 314 U.S. 252, 62 S.Ct. 190, 86 L. Ed. 192 (1941).

■ Fundamentally, defendants' view of the Sixth Amendment is too narrow. An impartial jury need not be an uninformed body of citizens. "A juror to be impartial must, to use language of Lord Coke, 'be indifferent as he stands unsworn.'" Reynolds v. United States, 98 U.S. 145, 154, 25 L.Ed. 244 (1878). In any event, this court believes that *voir dire* of prospective jurors by counsel will provide an adequate opportunity to select an impartial jury.

Defendants' assertion of Sixth Amendment rights leads to a broader constitutional perspective. There are other equally compelling constitutional rights.

The Constitution provides that "an accused shall enjoy the right to a speedy and public trial." Amend. VI.

"The right to a public trial is not only to protect the accused but to protect as much the public's right to know what goes on when men's lives and liberty are at stake. . . ." Lewis v. Peyton, 352 F.2d 791, 792 (4th Cir. 1965).

The list of reasons for presenting criminal cases to the public view is substantial. For example, the citizenry is informed of matters which impact on them and society; an aroused public can protect a wrongly accused defendant; citizens may offer constructive criticism or new evidence to either side.

■ The First Amendment commands that freedom of the press shall not be infringed, and this court is loathe to intrude on that guarantee. A free press cannot be shackled by speculations as to inflammatory publicity. For even if media coverage should give rise to unwarranted criticism, though, "it may be designed to harass those whose conduct has been honest and courageous . . . this seems a fair price to pay for a truly open society." ABA Standards Relating to Fair Trial and Free Press, Tentative Draft, pp. 50–51.

■ The indictment in this case is a matter of public record. A bill of particulars, which defines the indictment, is not a private matter between a de-fendant and the Government. This court knows of only two reported cases where defendants sought to impound a bill of particulars; the relief was denied in both cases. United States v. American Radiator and Standard Sanitary Corp., *supra;* United States v. American Oil Company, 259 F.Supp. 851 (D.N.J. 1966). Thus, this court concludes that there should be no impairment of public access to the bill of particulars in this case.

Defendants' motion is denied. The court requests counsel to present an appropriate order.