UNITED STATES of America

v.

Danny Howard MAYS et al.

Crim. No. B-78-36.

United States District Court,
E. D. Texas,
Beaumont Division.

Nov. 2, 1978.

J. A. "Tony" Canales, Lupe Salinas, and Mary L. Sinderson, Houston, Tex., for the United States.

Jan W. Fox, Houston, Tex., for defendant Mays.

John A. Pizzitola, Houston, Tex., for defendant Holloway.

Allen C. Isbell, Houston, Tex., for defendant Dillon.

Michael Ramsey, Houston, Tex., for defendant Bloodworth.

ORDER OF NOVEMBER 2, 1978 MODIFYING COURT'S PREVIOUS ORDERS OF OCTOBER 5, 1978 and OCTOBER 19, 1978

COWAN, District Judge.

Background of Present Discovery Controversy

The above-captioned case arises from an indictment in which the United States

charges that on February 8, 1977, Danny Howard Mays deprived Randall Alan Webster of rights secured by the Constitution and the laws of the United States by striking, shooting and otherwise assaulting Randall Alan Webster.

Counts TWO through SEVEN of the indictment allege, in essence, that the other defendants, Holloway, Dillon and Bloodworth, entered a conspiracy with Mays to "cover-up" Mays' actions. This alleged conspiracy involved, among other things, making allegedly false statements to investigators and giving allegedly false testimony before state and federal grand juries.

Defendants have filed extensive discovery motions which the government has, in large measure, complied with voluntarily. The only discovery matter upon which counsel could not agree involved a motion on behalf of the defendants to allow all defendants to examine the grand jury testimony of defendants Mays, Holloway, Dillon and Bloodworth, and transcripts of the grand jury testimony of two potential government witnesses, J. T. Olin and T. G. Morris. Also involved in the controversy is the grand jury testimony of L. F. Daffern, a purported eyewitness who originally gave testimony exculpatory of the defendant Mays, but who later repudiated his testimony and pled guilty to perjury.

This court, feeling that the "particularized need" discussed in the authorities cited *infra* had been established, entered an order requiring the prosecution to produce for the defense counsel transcripts of the state and federal grand jury testimony of defendants Mays, Holloway, Dillon and Bloodworth, witnesses Olin and Morris, and a possible but unlikely witness—Daffern.

The United States has urgently moved the court to reconsider the previous order, and the court has determined that the previous order was in part in error and in part correct for the reasons stated herein.

Basic Authorities Relating to Modification

The court has determined that the law requires the modification of its orders of October 5, 1978 and October 19, 1978, with reference to the production of transcripts of grand jury testimony of grand jury witnesses, J. T. Olin, L. F. Daffern, N. H. Holloway, P. D. Dillon, R. S. Bloodworth, and T. G. Morris.

This court is still thoroughly convinced that the interests of justice would be best served by delivering to counsel for the defendants all of the grand jury testimony of these grand jury witnesses in compliance with the holding and philosophy of *Dennis v. United States,* 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1968) and *Pittsburgh Plate Glass v. United States,* 360 U.S. 395, 400, 79 S.Ct. 1237, 3 L.Ed.2d 1323, where the Supreme Court emphasized "the inherent power and the inescapable duty of the trial court to lift the lid of secrecy on grand jury proceedings in aid of the search for truth." The Supreme Court in *Pittsburgh Plate Glass* indicated that the safer and better practice there would have been to lift the veil of grand jury secrecy. The Supreme Court said in *Dennis:*

> A conspiracy case carries with it the inevitable risk of wrongful attribution of responsibility to one or more of the multiple defendants. See, e. g., *United States v. Bufalino,* 285 F.2d 408, 417–18, (2nd Cir. 1960). Under these circumstances, it is especially important that the defense, the judge and the jury should have the assurance that the doors that may lead to truth have been unlocked. In our adversary system for determining guilt or innocence, it is rarely justifiable for the prosecution to have exclusive access to a storehouse of relevant fact.

384 U.S. at 873, 86 S.Ct. at 1851.

It is not true, as the United States asserts in its papers, that *Dennis* deals only with disclosure of grand jury testimony after a witness has testified. The Supreme Court clearly states at page 869, 86 S.Ct. at 1849, that:

> In general, however, the Court has confirmed the trial court's power under Rule 6(e) of the Federal Rules of Criminal Procedure to direct disclosure of grand jury testimony *'preliminarily to* or in connection with a judicial proceeding.'

■ Despite the extensive power granted to the court by Rule 6(e), *Dennis v. United States, supra,* and those cases following *Dennis,* the court's power to compel the United States to disclose, prior to trial, all of the grand jury testimony of witnesses, J. T. Olin and T. G. Morris is limited by the 1970 Amendment to the Jencks Act. The 1970 Amendment to the Jencks Act, codified at 18 U.S.C. § 3500, clearly includes a transcript of grand jury testimony within the meaning of the word "statement," and the Jencks Act itself clearly provides that a statement of a "[g]overnment witness or prospective [g]overnment witness (other than the defendant) to an agent of the [g]overnment . . . " shall be disclosed only after the witness has testified during the course of trial. It is apparent that the broad powers given by Rule 6(e) must be construed and applied in a manner consistent with the Jencks Act, including its 1970 Amendment.

For the reasons stated, therefore, the United States Attorney is correct in his position that this court has and had no power to compel the government to produce preliminarily the testimony of J. T. Olin and T. G. Morris, who will be witnesses for the prosecution. This court's order, insofar as it relates to Olin and Morris, was erroneous and was based upon the undersigned's inexcusable ignorance of the 1970 Amendment to the Jencks Act.

With reference to the four defendants, and L. F. Daffern, the situation is entirely different. The government does not intend to call, and cannot call, the defendants to testify. Statements of defendants are clearly exempted from the operation of the Jencks Act by the plain language of the statute, and thus the Jencks Act is no limitation upon the power of this court to order the United States to produce the transcripts of the testimony of the various defendants for the inspection of counsel for each of the defendants. The United States alleges in the indictment that all of the defendants entered into a conspiracy commencing on the 8th day of February, 1977, and extending until June 2, 1978, the date of filing of the indictment. The prosecution alleges that an integral part of this conspiracy was the giving of false testimony by all of the defendants, before state and federal grand juries. If the prosecution's theory is correct, each of the defendants was in effect acting as the agent of the other.

■ One well-recognized, long-established exception to the general rule that grand jury testimony is secret is that a defendant accused of perjury before a grand jury is entitled to review the entirety of his own testimony before the grand jury. The reason for this rule is obvious. A statement or statements taken out of context can appear to be misleading and false, whereas the same testimony taken in its entirety is not false. The leading case is *United States v. Remington,* 191 F.2d 246, 250–51 (2nd Cir. 1951), cited with approval by the United States Supreme Court in *Dennis v. United States,* 384 U.S. at 870, 86 S.Ct. 1840. For other authorities in support of this well-established exception, see *United States v. White,* 104 F.Supp. 120 (N.D. N.J.1952); *In re Bullock,* 103 F.Supp. 639 (D.C. D.C.1952); *United States v. Duffy,* 54 F.R.D 549 (D.C. Ill.1972); *United States v. Rosenberg,* 39 F.R.D. 301 (D.C. NY 1966).

In recognition of this exception, the United States here has made available to each of the defendants his own grand jury testimony, but the United States declines to make available to each defendant the testimony of the other defendants. The difficulty with the prosecution's position is that the prosecution is committed to the proposition that during the time the grand jury testimony was given, each of the defendants was acting pursuant to the conspiracy and each was thus the agent of the other.

The case upon which the United States places its principal reliance is *United States v. Percevault,* 490 F.2d 126 (2nd Cir. 1974), and it is true that *Percevault* supports the prosecution's position with reference to witnesses Olin and Morris. This order entered today is, however, totally consistent with *Percevault.* In *Percevault* the United States delivered to "the defense," i. e., counsel for all defendants, all statements of

all defendants awaiting trial. (See 490 F.2d at 128). The only statements which the United States declined to produce in *Percevault* were statements of *witnesses* made *after* the termination of the alleged conspiracy. The order entered today does not require the prosecution to produce testimony or statements of any government witnesses and the testimony covered by this order was allegedly given during and as a part of the execution of the alleged conspiracy.

The Court has not been cited to, nor has it discovered in its independent research, any case precisely in point, that is, a case involving an allegation that a number of defendants conspired to give false testimony to a grand jury. On the other hand, the production of the testimony of the four defendants, for each other, is not prohibited by the Jencks Act, and is clearly consistent with the letter and philosophy of *Dennis v. United States, supra;* therefore, in the absence of a case or a statute precisely in point, this court believes it has the discretion to order the United States to furnish to counsel for each of the defendants the grand jury testimony, state and federal, of all of the other defendants, to the extent that such transcripts are in the possession of or subject to the control of the prosecution, and the "inescapable duty" to so decree.

This court must assume that counsel for the defendants are not playing games with the court and are serious in their desire to obtain transcripts of the grand jury testimony of the other defendants. In this connection, the defendants are represented by responsible members of the bar of this court, and this court must assume, absent a showing to the contrary, that these counsel are in good faith in requesting access to these transcripts in the absence of affirmative evidence to the contrary.

The court's present action with reference to the transcripts of Mays, Holloway, Dillon, Bloodworth and Daffern is also mandated by *United States v. Hughes,* 413 F.2d 1244 (5th Cir. 1969) which held that a corporate defendant was entitled to review the testimony of its employees given before a grand jury which indicted the corporation and its chief executive officer for conspiracy to violate the antitrust laws. The Fifth Circuit there said:

While authority construing the newly revised Rule 16 is as yet meager, two decades of debate over the expansion of criminal discovery provides a guide to its interpretation. The revision was prompted in large measure by "the expanding body of materials, judicial and otherwise, favoring disclosure in criminal cases analogous to the civil practice." *Dennis v. United States,* 384 U.S. 855, 870–871, 86 S.Ct. 1840, 1949, 16 L.Ed.2d 973, 984 (1966). In light of the movement toward liberal criminal discovery as advocated by the commentators and successfully implemented in state courts, we approach problems of construing the Rule with the "realization that disclosure, rather than suppression, of relevant materials ordinarily promotes the proper administration of criminal justice." *Dennis v. United States,* supra.

Revised Rule 16 represents a significant change in emphasis. Under the prior practice non-disclosure was the norm, and the defendant had to bear the burden of justifying discovery. Cf. *Pittsburgh Plate Glass Co. v. United States,* 360 U.S. 395, 400, 79 S.Ct. 1237, 3 L.Ed.2d 1323, 1327 (1959). The revised Rule operates on the premise that "abuses [of discovery] are matter of legitimate concern—they argue however not for wholesale prohibition of criminal discovery but for circumspection and for appropriate sanctions tailored to dealing with apprehended abuses in the particular case." Brennan, The Criminal Prosecution: Sporting Event or Quest for Truth? 1963 Wash.U.L.Q. 279, 292. Under the revised Rule when the defendant properly makes a claim for inspection under 16(a)(3) or (b), discovery normally will be granted unless special reasons exist justifying the preservation of secrecy. See *United States v. Leighton,* 265 F.Supp. 27, 39 (SD N.Y.1967). *United States v. Federman,* 41 F.R.D. 339 (SD N.Y.1967); W. Barron & A. Holtzoff, Federal Practice & Procedure, Rules Ed.

§ 2033, at 61 (Wright, ed.) (Supp.1967); Rezneck, The New Federal Rules of Criminal Procedure, 54 Geo.L.J. 1276, 1277 (1966).

In this case the government has not presented any special circumstances justifying the restriction or denial of discovery. Therefore, the issue before us is whether the defendants put forward proper claims for disclosure under 16(a)(3) and (b).

413 F.2d at 1249–1250.

The prosecution's present attitude and position—insofar as it related to the transcripts of the testimony of Mays, Holloway, Dillon, Bloodworth and Daffern—is totally inconsistent with the holding and language of *Hughes.*

This court also finds persuasive the following cases: *United States v. Rivero,* 532 F.2d 450 (5th Cir. 1976); *Allen v. United States,* 129 U.S.App.D.C. 61, 390 F.2d 476 (1968); and *Melton v. United States,* 398 F.2d 321 (10th Cir. 1968).

Grand Jury Testimony of L. F. Daffern

In the government's motion and authorities for reconsideration of the order of October 5, 1978, the government says:

The sixth individual is L. F. Daffern. This person, a purported eyewitness who is a private citizen and not a police officer, originally gave testimony before the grand jury which tended to exculpate one or more of the defendants, subsequently repudiated this testimony, admitted he was not present and has pled guilty to perjury before the grand jury in connection with it. What the defendants are seeking here, then, is the perjured testimony before the grand jury. Daffern will not be called as a government witness. He is available as a witness for the defendants and is under no legal obligation of secrecy. The defendants are free to interview him and to subpoena him as a witness if they deem this to be in their interest.

From the foregoing, it is apparent that there is very little secrecy left with reference to Daffern's testimony. His indictment and his guilty plea before the grand jury, and the proceedings pursuant to Rule 11 are all matters of public record.

There is no way for this court to know with certainty, and no way for any of the attorneys in the case to know with certainty, whether Daffern's testimony before the grand jury was true or whether his later repudiation of it was true. This court is aware that *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) does not as a general rule furnish a pretrial remedy (see *U. S. v. Scott,* 524 F.2d 465 at 467 [5th Cir.], and *U. S. v. Frick,* 490 F.2d 666 [5th Cir.]); but the government here voluntarily followed the salutary procedure of furnishing *Brady* material pretrial. There is thus no reason why Daffern's testimony should not be made available to the defendants. This court is not prohibited by the Jencks Act from ordering disclosure of the Daffern testimony because he is not an actual or potential government witness. The disclosure of the Daffern testimony is clearly consistent with the letter and spirit of *Dennis v. United States, supra,* and thus the prosecution will be required to make available to counsel for the various defendants the transcripts of the testimony of L. F. Daffern before the state and federal grand juries.

Particularized Need

It has been clear since *United States v. Proctor & Gamble,* 356 U.S. 677, at 683, 78 S.Ct. 983, 2 L.Ed.2d 1077, that the veil of grand jury secrecy may be lifted discretely and limitedly in cases of "particularized need." The court has sought guidance and instruction from both counsel and the authorities concerning the meaning of the term "particularized need." The court has also reviewed this entire file and all of the documents on file for the purpose of obtaining as thorough a grasp as possible at this preliminary stage, of the factual background of this case, and of the various motions. It appears to the court that the following factors support the conclusion that this is a case of "particularized need" in which this court has the "inescapable

duty of the trial court to lift the lid of secrecy on grand jury proceedings in aid of the search for truth . . . " See *Dennis v. United States,* 346 F.2d 10, at 17, and 384 U.S. 855, at 868, 86 S.Ct. 1840, at 1848, 16 L.Ed.2d 973. The court has relied upon the following factors in arriving at its determination that this is a case of "particularized need," and that the grand jury testimony of the six witnesses named should be produced to the extent that this court has the power to compel this disclosure. The factors are:

1. This case is one which has become intricate and complex. The event in controversy apparently occurred after a high speed chase in darkness. The events alleged to have occurred in Count ONE probably occurred, if they occurred as alleged, in an atmosphere of confusion, and immediately thereafter a large number of people of diverse interests and attitudes began to diverge upon the scene. Understandably, the perception of these various persons has varied. The events were investigated in intricate detail by the Houston Police Department, the state grand jury, by the federal grand jury, by the F.B.I., and perhaps other agencies. Testimony was given on various dates by many different people at various sessions of both state and federal grand juries.

This entire matrix of events has created an incredibly complex situation in which it would be difficult for any attorney charged with either the prosecution or the defense of one of the defendants to make absolutely certain that he had in mind all of the relevant facts and all of the possible versions of what occurred.

In addition, the prosecution does not seek to convict one man for one momentary act, but predicates Counts TWO through SEVEN of the indictment upon an alleged conspiracy extending in time from February 1977 until June 2, 1978, involving an alleged cover-up scheme participated in by numerous conspirators, some indicted and some unindicted.

In short, this is an unusually complex case in which the "search for the truth" is a much more burdensome and difficult task than is normal. Affording the prosecution exclusive access to the "storehouse of relevant fact" contained in the state and federal grand jury testimony of Dillon, Bloodworth, Mays, Olin, Morris and Daffern is obviously violative of the principle that:

> . . . [i]n our adversary system for determining guilt or innocence, it is rarely justifiable for the prosecution to have exclusive access to a storehouse of relevant fact. Exceptions to this are justifiable only by the clearest and most compelling considerations. . .

384 U.S. at 873, 86 S.Ct. at 1851.

This possible inequity is compounded when one realizes that defendants are persons of finite financial resources; whereas, the United States has available to it the practically unlimited monetary and manpower resources of the Attorney General's Department. For example, at the motion conference which the United States was given an opportunity to reargue its position concerning this court's order of October 5, the government had present a total of five attorneys, including the United States Attorney himself, an appellate expert from the Attorney General's office, the head of the Civil Rights Division of the local office of the United States Attorney, and two other lawyers.

2. There is an obvious diversity of interest between the various defendants. Each stands in different shoes. The interest of Mays and Holloway are obviously adverse to each other and those of the other defendants. Defendants Dillon and Bloodworth obviously stand in a much different and more favorable position than do Mays and Holloway. Obvious strategic and tactical considerations make it difficult for the defendants to cooperate fully with one another.

3. The prosecution's case, as best the court can determine from the review of

the file thus far, is based at least in part on the testimony of former officers who have recanted earlier positions and now intend to testify adversely to the present defendants. The situation is certainly different from that in which the prosecution's case is based upon the testimony of witnesses who have from the inception taken consistent positions and given consistent and integral testimony.

4. The United States has elected to proceed in one indictment against a group of defendants for two arguably separate events. On the one hand, the event alleged in Count ONE involves an allegation that Danny Howard Mays violated Randall Alan Wesbster's civil rights by striking him and shooting him. This is a simple and distinct allegation. On the other hand, the allegations of Counts TWO through SIX allege an intricate, complex set of circumstances relating to an alleged "cover-up." The United States had the option of proceeding initially against Mr. Mays and obtaining a determination as to whether or not in fact he assaulted and shot Webster, and then assuming conviction, trying the alleged "cover-up." The complexity of this matter, therefore, is in part created by the manner in which the government has elected to pursue this matter, and the form of indictment which it has sought and obtained.

5. This court has currently overruled the defendants' motions to sever; however, this is a matter which will require continual re-examination during the preparation phase and trial of this cause. Defendants have not yet been able to persuade the court that good grounds exist for their severance motions; however, upon obtaining access to this concealed "storehouse of relevant fact," it is entirely possible that situations will become manifest which make it necessary to sever all or a portion of these defendants from the present indictment or to sever certain counts from other counts. In this connection, the efficient administration of justice will certainly be served if such severance occurs before and not during the trial of this cause.

6. In a simple case in which a jury is attempting to determine the truth with reference to one event occurring at a specific time and witnessed by specific individuals, the Jencks Act procedure of furnishing the defense a copy of the prosecution witness's statement after the witness has testified, does not cause undue delay; however, in a case like the present one, where the government complains of an intricate conspiracy extending for almost a year and a half, and involving statements to numerous individuals and testimony before several investigative bodies, it places defendants' counsel at an unfair advantage to thrust upon them voluminous material after the prosecution's direct examination and expect them to thereafter immediately conduct a professional and effective cross-examination.

7. It is always possible that on the eve or during trial one of these defendants might suddenly and perhaps unexpectedly face his co-defendant as a hostile witness attempting to exculpate himself by casting all or a portion of the fault upon his co-defendant.

The reasons set forth above are some, but not all, of the reasons why this court has concluded that this was and is a case where "particularized need" exists.

Balancing of Factors

The court has attempted to balance the desirability of complete pretrial disclosure with the traditional policy in favor of grand jury secrecy. For reasons stated below, in striking this balance, the court has reached the opinion that the veil of secrecy should be lifted to the extent set forth in this order, based upon the following factors:

1. The grand juries before whom these defendants allegedly perjured themselves have long since completed their work. Numerous courts have empha-

sized the concept that the reasons for grand jury secrecy greatly diminished once the grand jury has completed its work and adjourned. See *Beatrice Foods Co. v. United States*, 312 F.2d 29 (9th Cir. 1963); *United States v. Alper*, 156 F.2d 222 (2nd Cir. 1946); *United States v. General Motors Corp.*, 352 F.Supp. 1071 (DC Mich. 1973).

2. While the undersigned freely acknowledges that its judgment in this matter is certainly not infallible and may well be mistaken, it is this court's perception of this situation that there is very minimal danger here of intimidation of witnesses or subornation of perjury. The United States, although invited to do so at oral argument, could not give any reasons, persuasive to this court, for believing that intimidation of witnesses, or subornation of perjury was a real danger.

This matter has been thoroughly ventilated in the press and in numerous judicial proceedings. Any opportunities for intimidation or subornation of perjury have existed for many months, and in this court's judgment, will not be materially increased by the very limited disclosure called for by this order.

In addition, as indicated otherwise in this order, these defendants are represented by responsible and reputable members of the bar of this court. The defendants themselves, while accused of serious crimes, are presumed innocent until proved guilty. They were all at one time believed by this community to be persons worthy to serve as peace officers, and are certainly not persons of known prior criminal backgrounds, or having demonstrated propensities to intimidate witnesses or suborn perjury. Any conduct in intimidating witnesses or suborning perjury at this stage would involve such enormous risks that it is almost a flight of fancy to believe that a defendant, at this stage of the proceedings, would subject himself to the risks inherent in any attempted intimidation of witnesses or subornation of perjury.

3. This court has the duty to insure that all parties in this litigation receive a fair trial; it also has the duty, in promoting judicial economy, to minimize the risk that it will be necessary to try this case twice. The undersigned is persuaded that an unbending, rigid adherence (on the facts of this case) to the policy of grand jury secrecy would flirt with reversible error, and create a substantial risk of this court's being required to try this case twice. See particularly *United States v. Hughes*, 413 F.2d 1244 (5th Cir. 1969); *United States v. Rivero*, 532 F.2d 450 (5th Cir. 1976). Another case where a court held it advisable to give the defendant the benefit of the doubt on a discovery matter involving grand jury testimony, even where no particularized need was shown, is *United States v. Hall*, 424 F.Supp. 508 at 528 (W.D. Okl.1975). The interests of judicial economy thus favor a liberal attitude toward the discovery request in controversy.

4. The government's case, if based on solid and persuasive evidence, will not be harmed by the disclosure here ordered; on the other hand, the ability of the defendants to obtain a fair trial, and the ability of the defendants' lawyers to properly represent their clients, will, in the court's judgment, be seriously impeded if only the prosecution is given access to the "storehouse of relevant fact," (384 U.S. at 873, 86 S.Ct. 1840), possibly contained in the transcripts of grand jury testimony.

5. The United States in this case was not legally required to have the grand jury testimony reported or transcribed. See *United States v. Mallory*, 460 F.2d 243 (10th Cir. 1972). Reporting a transcript of this testimony involved considerable expense. An objective observer might conclude that there is at least a possibility that the United States used proceedings before the grand jury as a discovery tool. If this occurred, allowing the prosecution the exclusive access to a "storehouse of rel-

evant fact" is particularly inappropriate and inequitable.

## Orders

For the reasons set forth above, the court makes the following orders in connection with each of the persons, the discovery of whose testimony is in issue:

1. The United States will produce for the inspection of the counsel for all defendants the state and federal grand jury testimony of P. D. Dillon, to the extent that transcripts of such testimony are in the possession of or subject to the control of the prosecution.

2. The United States will produce for the inspection of counsel for all defendants, the state and federal grand jury testimony of R. S. Bloodworth, to the extent that such transcripts are in the possession of or subject to the control of the prosecution.

3. The United States will produce for the inspection of counsel for all defendants, the state and federal grand jury testimony of N. W. Holloway, to the extent that such transcripts are in the possession of or subject to the control of the prosecution.

4. The prosecution will produce for the inspection of counsel for all defendants, the transcripts and the state and federal grand jury testimony of Danny Howard Mays, to the extent that such transcripts are subject to the possession or control of the United States.

5. The prosecution need not produce preliminarily the grand jury testimony of J. T. Olin and T. G. Morris, but will be prepared, at the time of trial, to produce for inspection for counsel for all defendants, the state and federal grand jury testimony of J. T. Olin and T. G. Morris. The court will, at the time this testimony is produced, recess the trial for a sufficient length of time to give counsel for all defendants a full and adequate opportunity to review this testimony in preparation for cross-examination of T. J. Olin and T. G. Morris, even though this procedure will inevitably delay trial of this cause.

6. The United States will produce for the inspection of counsel for all defendants the transcripts of the state and federal grand jury testimony of L. F. Daffern.

## Limitations upon Production

In recognition of the admonition of the superior courts that disclosure of grand jury testimony should be compelled only "discretely and limitedly," *United States v. Proctor & Gamble*, 356 U.S. at 683, 78 S.Ct. 983, the court imposes the following restrictions upon the ability of counsel for defendants to examine and use the grand jury testimony ordered disclosed to counsel by this order:

1. The prosecution shall delete from the transcripts made available any comments, arguments, or statements, other than in question form, by government counsel or by the grand jurors themselves.

2. The government shall delete from the transcripts any comments made by the individual grand jurors.

3. The government shall delete from the transcripts any portions of such transcripts which would reveal the identity of the grand jurors.

4. The government shall omit from the testimony produced any testimony not relating to alleged activities of Mays and Holloway described in Counts ONE through THREE of the indictment, and the alleged acts of the other conspirators in Counts FOUR, FIVE and SIX of the indictment.

5. Counsel for the defendants shall not disclose the content of the testimony which they reviewed to any persons other than their clients and any witness with whom counsel must legitimately and in good faith confer in connection with the representation of their clients in this case.

6. Counsel for defendants shall not use the testimony for any purpose other than their legitimate and good faith efforts to defend their clients in this specific case.

7. The government will omit and block out from the testimony produced pursuant to this order the names of any individuals not previously mentioned in the court papers on file herein. In this connection, the names of the persons whose names already appear in the file herein are: J. T. Olin, T. G. Morris, P. D. Dillon, R. S. Bloodworth, N. H. Holloway, Danny Howard Mays, L. F. Daffern, Randall Alan Webster, William E. Byrd, James A. Estes, Charles J. Powell, Billy Junior Dolan, Lt. W. C. Eichenhorst, Det. N. K. Marriott, Det. J. H. Binford, W. E. Bord, William Gerald List, Robert Valentine, James D. McCormick, T. M. Baber, Dale Boman, Vern Burnett, Patricia Ormand, and Charles Z. Renfro.

8. Examination of the transcripts shall occur in the office of the United States Attorney and no copies shall be made of the transcripts.

Compliance with Speedy Trial Act

On June 13, 1978, the court met in chambers with counsel for all parties in compliance with 18 U.S.C. § 3161(a) and established a schedule for the filing of motions in the above styled case. Thereafter, the court conducted hearings related to the above styled case on September 22, September 28, and October 2, and entered this court's order of October 5, 1978. That order recites on page 6 that the period of time from June 13, 1978 to November 3, 1978 was excludable time under the portions of the statute and on the basis of the statutory authority there cited. Thereafter, on October 16, 1978, the government filed a motion for clarification of the order of October 5, 1978, and the court entered its order of October 19, 1978, clarifying such order. Thereupon the United States, on the 24th day of October, 1978, filed a motion for reconsideration of the court's order of October 5, 1978, and the court has had such motion under consideration until this date.

The court specifically finds that the government's motion for reconsideration of the order of October 5, 1978, was filed in good faith, with no intention to delay, and in fact, the court has determined that its order of October 5, 1978 was erroneous and contrary to law insofar as it relates to the grand jury testimony of government witnesses Olin and Morris. This court does not know whether or not the United States wishes to appeal from this modified order, entered today; however, the court acknowledges that in view of the tension which exists between the policy of the Jencks Act, as amended in 1970, and the philosophy of *Dennis v. United States, supra,* there is room for a good faith difference of view concerning the matters with which this order deals, and thus an interlocutory appeal from this court's order would, in the court's judgment, be an appeal taken in good faith. The court therefore excludes all time from October 24, 1978, until the issues raised by this order are resolved, either by appeal or by a failure to perfect an appeal on the authority of 18 U.S.C. § 3161(h)(1)(G) and 18 U.S.C. § 3161(h)(1)(D) dealing with delay resulting from interlocutory appeals. The court will also execute any order consistent with the spirit and letter of this order to allow the government to prosecute an interlocutory appeal from this order. Any such order should be submitted forthwith.

In the event the United States determines that it will comply with this order and not appeal, counsel are directed to so notify the court as soon as possible, and a conference will be scheduled to re-set this case for trial at the earliest date consistent with counsel's having an adequate opportunity to review the material ordered produced and complete trial preparations.