

# NUMBER 13-08-00511-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**ELISEO BARNHART,**                                                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                 **Appellee.**

## On appeal from the 105th District Court of
## Kleberg County, Texas.

# MEMORANDUM OPINION

### Before Justices Yañez, Benavides, and Vela
### Memorandum Opinion by Justice Yañez

Appellant, Eliseo Barnhart, was convicted of two counts of aggravated perjury.[1]

Appellant was sentenced to two years' confinement for each count to run concurrently;

however, his sentence was suspended and appellant was placed on community

---

[1] *See* TEX. PENAL CODE ANN. § 37.03 (Vernon 2003); *see also id.* § 37.02 (Vernon 2003).

supervision for a period of five years.  By  sixteen issues, appellant contends that:  (1) the evidence was legally and factually insufficient to support his convictions (issues 1-10 and 13-16); (2) "[t]he trial court erred in instructing the jury that proof of the falsity of any statement was sufficient" (issue 11); and (3) "[t]he trial court erred in denying appellant's request that the names of the grand jurors be disclosed to appellant" (issue 12).  We affirm in part and reverse in part and remand.

## I. BACKGROUND

Andrea Espinosa was in a training program with a justice of the peace in Willacy County.  Appellant, another justice of the peace, worked in the same office where Espinosa was being trained.  After temporarily working with appellant, Espinosa reported to police that appellant had, among other things, engaged in unwelcome touching of her breasts. A grand jury was impaneled to determine whether charges would be brought against appellant.  Appellant testified at the grand jury proceeding and allegedly denied Espinosa's allegations.  The grand jury did not indict appellant.  Espinosa also filed a civil lawsuit against appellant.  Appellant testified at a deposition for that case.[2]

After appellant made a statement to the Texas Rangers allegedly admitting that he had committed some of the acts alleged by Espinosa, the State charged appellant with two counts of aggravated perjury.[3]  Count one alleged that appellant made a false statement when he testified before the grand jury regarding Espinosa's sexual assault allegations that he did not touch Espinosa's breasts, he did not become sexually aroused or excited during the encounter, and he did not kiss Espinosa.  Count two alleged that appellant made a

---

[2] There is nothing in the record concerning the disposition of the civil lawsuit.

[3] *See* TEX. PENAL CODE ANN. § 37.03; *see also id.* § 37.02.

2

false statement at his deposition by stating that he did not touch Espinosa's breasts, he did not become sexually aroused or excited during the encounter, and he did not kiss Espinosa. A trial was held where the State presented testimony from, among others, Espinosa, Ubaldo Mungia, Fred Gilbert, Alomar Moreno, Rolando Castaneda, Juan Guerra, Elizabeth Torres, and Javier Villalobos.

Espinosa testified that she was working at the "JP's office" for "Judge Solis" in 2006. Espinosa stated that on February 3, 2006, appellant was training her to perform a work-related task. At 5:00 p.m., Espinosa left, picked up her children, and went to purchase a pie for a birthday party she was attending that evening. Espinosa realized that she did not have her purse. After searching various places for her purse, Espinosa eventually contacted appellant and asked him to unlock the door of the building so that she could get her purse. Espinosa testified that "around 6:00 or 6:30," she met appellant at the building and he unlocked the back door for her. Espinosa entered the building and proceeded to appellant's office, which was locked. Espinosa asked appellant to unlock his office door, and he did so. Espinosa testified that when she got her purse, appellant "reached with his hand and he grabbed . . . [her] breast area." According to Espinosa, appellant then "put his hand under [her] shirt and under [her] bra." Espinosa stated that she pushed appellant away and told him she was "not like that" and that appellant repeatedly told her, "I know how you are."

According to Espinosa, she attempted to leave through the back door; however, unbeknownst to her, appellant had already locked it. Espinosa stated that she went to a hallway and appellant "pinned [her] back against the hallway" and touched her breasts, "groin area," and "buttocks." Espinosa testified that appellant stated, "I have my penis real hard" and that he "rubbed himself against" her. According to Espinosa, appellant undid

3

his zipper and "pulled out his penis." Espinosa stated that when appellant attempted to kiss her, she moved and he kissed her neck. Espinosa testified that she lied to appellant, stating that CPS would remove her children because she left them home alone and that once she picked up her children, she would come back. Espinosa then left and did not return.

Mungia testified that he was a member of the grand jury in appellant's case considering Espinosa's sexual assault allegations. Mungia recalled that Espinosa stated that appellant exposed his penis to her; however, Mungia could not recall whether Espinosa said appellant touched her inappropriately. The State reminded Mungia that he had testified before the grand jury in appellant's perjury case and had stated that "[Espinosa's] main complaint was that he had, I guess, grabbed her or touched her inappropriately." The State told Mungia, that the district attorney then asked, "Touched her breasts . . . . Do you recall that?", and Mungia replied, "Yes." When asked if that refreshed his memory, Mungia responded, "Yeah, I guess. If I said it then, I guess."

Mungia stated that appellant voluntarily testified before the grand jury and informed the grand jurors that his attorney had advised him not to testify. Mungia testified that appellant did not deny the allegations because appellant did not mention them. However, on re-direct examination, the following colloquy occurred:

[The State]: As far as you recollect, you-all knew what the accusations were by Ms. Espinosa?

[Mungia]: Well, yes, that's what I told him.

[The State]: And he [appellant] knew what the accusations were, and he was questioned by the Grand Jury as to his accusations, is that correct?

[Mungia]: There were questions asked regarding that.

[The State]: And, basically, the gist of his testimony, was he denied anything inappropriate?

4

[Mungia]:       Right.

[The State]:  Denied touching her, denied exposing himself, all of that, isn't that correct?

[Mungia]:       Right.

[The State]:  And the statement that he gave later contradicts his testimony before you, isn't that fair to say?

[Mungia]:       The statements that came out later, yes.

[The State]:  If he admitted to kissing her and touching her breasts and telling her, hey, you got me excited, that contradicts his testimony before you-all, isn't that correct?

[Mungia]:       Yes.

Gilbert testified that he was a member of the same grand jury and that he remembered that Espinosa made allegations of sexual harassment or sexual misconduct. Gilbert did not recall the specifics, and when asked by the State if he recalled whether there were allegations that appellant touched Espinosa's breasts or exposed his penis to her, Gilbert stated he did not recall. However, Gilbert testified that he remembered that there was an allegation of some touching, but he did not recall the details. Gilbert testified that appellant said, "he didn't do it," and Gilbert believed appellant was denying Espinosa's allegations.

Moreno testified that she was a member of the same grand jury that investigated Espinosa's allegations against appellant. Moreno stated that Espinosa testified that appellant touched her breasts and showed her his penis when she went to retrieve her purse at the office. Moreno testified that appellant denied touching Espinosa's breasts, kissing her, and exposing himself to her. However, Moreno could not recall whether appellant testified that he was not sexually aroused. When asked if it was possible that an indictment stemming from Espinosa's sexual assault allegations could have been issued if appellant had testified that he "wanted to kiss her and our lips touched for a second; I

5

touched both of her breasts and I didn't take out my penis, but I did tell her, 'mira como me dejastes', meaning she had turned me on", Moreno replied, "Probably would." On cross-examination, Moreno stated that she was "pretty sure" that appellant was sworn in before testifying before the grand jury.

Guerra, the district attorney for Willacy County at the time of appellant's trial, testified that the reason the grand jury met on May 18, 2006, was to investigate whether charges of indecency and sexual assault would be brought against appellant and to investigate whether someone attempted to extort money from appellant.[4] Guerra stated that appellant had not been summoned to appear before the grand jury and that he did not believe that appellant would testify. Guerra explained that prior to the grand jury meeting, appellant had asked him if he could testify, so Guerra contacted appellant's attorney, who told Guerra that appellant would not testify.

Guerra recalled that at that grand jury proceeding, Espinosa stated that appellant "grabbed" her, "penned [sic]" her against the wall, attempted to grab her breast, "took out" his penis, and tried to kiss her. When the grand jury "finished" and the court reporter had left, Guerra found appellant sitting outside. Appellant told Guerra that he wanted to testify before the grand jury; Guerra informed appellant that his attorney had stated he should not testify and advised appellant to follow his lawyer's advice. Guerra stated that appellant "insisted" on testifying; so, after Guerra "warned" appellant that he would be testifying under oath, appellant testified before the grand jury without a court reporter present. According to Guerra, appellant made his statements to the grand jury under oath.[5]

---

[4] It appears from the record that appellant had accused Espinosa of extortion.

[5] Guerra did not recall specifically who administered the oath, but stated it would have been the bailiff on duty at that time.

6

Guerra testified that the grand jurors asked "specific questions, which [appellant] kept denying everything, saying, 'Nothing happened. Nothing inappropriate happened.'" Guerra recalled the following:

> I remember one of them [the grand jurors], specifically, it was a female Grand Juror, was very, very specific about asking him, "Did you grab her breasts and did you try to kiss her," and he said, "No. Nothing inappropriate happened." He kept saying that, "I just went there, opened the door, stood there. She went and got her purse, came back and I locked it." And he said, "No more than maybe three, four minutes. That's what it took. I'm not sure why she's doing this to me."

Guerra stated that one of the grand jurors asked if appellant had "taken out his penis" and that appellant said, "No. I didn't do that. And I didn't touch her and I didn't do anything. I'm not sure why she's doing—why she's saying what she's saying." Guerra testified that one of the grand jurors asked if appellant was sexually aroused. Although Guerra did not state how appellant responded to the question, Guerra said that appellant denied everything and insisted that nothing inappropriate happened.

Guerra testified that the questions that the grand jurors asked were material and that those questions were "pertinent" because "[they] were looking at the sexual assault and the definition of sexual assault versus indecency, whether or not he actually penetrated her . . . ." Guerra believed that if appellant had admitted any of the allegations made by Espinosa, appellant would have been indicted. Guerra concluded, therefore, that appellant's alleged false statements to the grand jury affected the outcome of the grand jury proceeding.

Guerra stated that he became aware of the statement appellant made to the Texas Rangers—a statement Guerra described as "totally the opposite of what [appellant] had said [at the grand jury proceeding]." Guerra testified that the statement appellant made to the Texas Rangers was consistent with Espinosa's testimony. Guerra stated that he

7

believed that appellant committed aggravated perjury when he testified before the grand jury.[6]

Torres, a court reporter, testified that she was the court reporter for deposition testimony given by appellant on August 21, 2006 in Espinosa's civil case against appellant. Torres stated that Espinosa's civil case was brought in the 197th Judicial District of Willacy County, Texas. On cross-examination, Torres acknowledged that defense exhibit number three was an "errata sheet" purporting to change appellant's answers to several of the questions asked during the deposition.[7] However, Torres did not explain what answers appellant tried to correct.[8]

Villalobos, an attorney, testified that he had represented Espinosa in a civil lawsuit that Espinosa filed against appellant for numerous causes of action including battery, assault, false imprisonment, and possible sexual harassment.[9] Villalobos stated that he deposed appellant for that lawsuit. According to Villalobos, appellant was aware of the allegations that Espinosa was making against him when he deposed appellant. Villalobos testified that the "the crux of the matters was whether there had been touching, inappropriate touching, and whether—we had plead [sic] false imprisonment and those

---

[6] Appellant objected to Guerra's statement on the basis that it invaded the province of the jury; however, the trial court overruled his objection.

[7] Appellant's attorney informed Torres that an errata sheet allows a person to change his or her responses to questions taken at a deposition. Torres stated that she had heard attorneys say that a person may correct a misspelling "or something that was inaccurate like that, at the time, not testimony." However, Torres admitted that she did not know what the rules allowed.

[8] The errata sheet, which was admitted into evidence as defense exhibit number three, shows that appellant changed his answers from "No" to "Yes" to the following two questions: (1) "Have you ever had a relationship, sexual in nature—and what I mean by 'sexual in nature,' I mean the touching, stimulation of either individual private parts or reproductive organs either with a hand or the mouth or the reproductive organ in itself since you've been married?"; and (2) "Have you ever kissed any other woman other—any woman other than your wife, an adult woman since you've been married."

[9] Villalobos stated that he no longer represented Espinosa in that case.

8

matters." Villalobos stated that appellant denied any inappropriate behavior and denied kissing any woman other than his wife. Villalobos testified that the questions he asked appellant were material to the case because it was important to determine "whether there was actual touching, inappropriate behavior." The State then asked, "Okay. And his statement in the deposition where you asked him, 'Did it excite you', referring to the way that [Espinosa] was dressed and his response 'no', would that in your opinion be a material statement?" Villalobos replied, "It would have been. What we were trying to do, since he was denying, we were trying to see—kind of go through the little history of the incident and part of that was whether—why he would have come back two hours later when he initially didn't want to be there in the first place. So, pretty much the questioning, other than, of course, the name and all that type of deal would have been material to the prosecution of the case."

On cross-examination, Villalobos stated that appellant's deposition in the civil case was taken in Hidalgo County, Texas. When asked, "Now, if the indictment alleges that this statement was given in Willacy, that's not true, is that correct?", Villalobos responded, "The proceedings were in Willacy, but the actual statement was—I believe it was in Hidalgo." Villalobos stated, "That [whether the perjured testimony was in Hidalgo or Willacy Counties] would depend on how the courts would interpret. The proceedings were in Willacy, but the statement was over there, so I don't know whether they would construe it as a proceeding in Willacy or Hidalgo."

On re-direct examination, Villalobos testified that appellant was fully aware of Espinosa's allegations when he denied them. Villalobos stated that he believed that, in the context of the deposition, appellant was denying all of Espinosa's allegations and was claiming that all he did was open the door for Espinosa, who got her purse, and left.

The trial court admitted into evidence excerpts of appellant's deposition. In the excerpts, appellant stated that he "probably" told one member of the media that Espinosa's allegations were not true and that when another member of the media asked about the allegations, he denied them and stated that "nothing had happened." When asked how his family would react if the allegations were proven to be true, appellant stated that the allegations were not true. Espinosa's civil attorney asked appellant if he liked how Espinosa "looked." Appellant responded that Espinosa was not a "bad looking lady." Espinosa's attorney then asked, "Did it excite you?" and appellant replied, "No." During the deposition, the following exchange occurred:[10]

| [Espinosa's attorney]: | Have you ever had a relationship, sexual in nature—and what I mean by "sexual in nature," I mean the touching, stimulating of either individual private parts or reproductive organs either with a hand or the mouth or the reproductive organ in itself since you've been married? |
|---|---|
| [Appellant]: | No, sir. |
| [Espinosa's attorney]: | Have you ever kissed any other woman other—any woman other than your wife, an adult woman since you've been married? |
| [Appellant]: | No, sir. |

Castaneda, a sergeant with the Texas Rangers, testified that he interviewed appellant on September 11, 2006.[11] This was the second statement appellant made to the Texas Rangers—the first statement was made to Ranger Victor Escalon.[12] Appellant's statement to Ranger Castaneda was read into the record. In this statement, appellant said

_____

[10] As noted, in his errata sheet, appellant changed his answers to these questions to "yes."

[11] Appellant's attorney at the time was present when he made the second statement to Ranger Castaneda.

[12] Appellant denied the allegations when he was interviewed by Ranger Escalon.

10

that he "would like to add" to the first statement taken by Escalon because he "left out" some information in order to "talk to his wife" before revealing it. In his second statement, appellant claimed that while at his office, Espinosa asked him to touch her and admitted that he "consensually" touched her shoulder and both her breasts over her clothing. In the statement, appellant explained that he wanted to kiss Espinosa, that their lips touched "for about a second," and that Espinosa turned her head away. Appellant stated that although he did not "pull out" his penis, he told Espinosa, "'mira como me dejastes' meaning that she had turned [him] on."

The defense presented the following witnesses: Paul Wittworth, Billie Pickard, Teresa "Terry" Flores, Zachary Gonzalez, Lauro Oscar Gutierrez, Aurora Pedraza, Uvaldo Zamora, Sylvia Frescas, Gilbert Lozano, and Christina Caldera. Wittworth, Flores, Gutierrez, Zamora, and Lozano testified that Guerra's reputation was "bad." Pickard, Pedraza, Frescas, and Caldera testified that appellant had a "good" reputation.

Zamora, the chief of police for the Raymondville Police Department, testified that he helped investigate whether Espinosa and her family attempted to extort money from appellant. According to Zamora, the investigation had been "compromised" because someone had informed Espinosa that appellant had reported the extortion attempt to the Texas Rangers. Zamora stated that he planned to conduct an investigation to determine who had informed Espinosa that appellant contacted the Texas Rangers. However, according to Zamora, Guerra told him not to conduct the investigation.

After both sides closed, appellant objected to the trial court's instruction in the jury charge which stated, "When a person is charged with making more than one false statement, the proof of the falsity of any one or more of said statements is sufficient to support a finding of guilty." Specifically, appellant's defense counsel argued the following:

11

Again, we're asking that the State elect what means they're going to prove their case. They've—they've—they indicted my client with allegedly making three statements. This is their opportunity to say, well, we abandon this and we're going to prove our case by proving that, you know, he didn't—he lied about not kissing [Espinosa], he lied about not touching her breasts or he lied about him not becoming sexually aroused. And so, we object to that statement because, I mean, the State is required to prove in their case everything that they allege in their indictment. If they choose to prove three ways of committing the offense of Perjury, well, then they're required to prove it three ways. That is the purpose of our asking the Court to make—have them make an election, Judge, so we object to that paragraph.

The trial court overruled the objection. The jury convicted appellant of two counts of aggravated perjury. Appellant was sentenced to two years' confinement for each count; however, that sentence was suspended and appellant was placed on community supervision for a period of five years. This appeal ensued.

## II. LEGAL AND FACTUAL SUFFICIENCY

By his first through sixth issues, appellant contends that the evidence is legally and factually insufficient to support the verdict.

### A. Standard of Review and Applicable Law

In conducting a legal sufficiency review, we view the relevant evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[13] We do not reevaluate the weight and credibility of the evidence, and we do not substitute our own judgment for the trier of fact.[14] Instead, we consider whether the jury reached a rational decision.[15]

In a factual sufficiency review, we review the evidence in a neutral light to determine

---

[13] *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Powell v. State*, 194 S.W.3d 503, 506 (Tex. Crim. App. 2006); *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)); *Escamilla v. State*, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004).

[14] *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000) (en banc); *Beckham v. State*, 29 S.W.3d 148, 151 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd).

[15] *Beckham*, 29 S.W.3d at 151.

whether the evidence is so weak that the jury's verdict seems clearly wrong and manifestly unjust or against the great weight and preponderance of the evidence.[16] This Court will not reverse the jury's verdict unless we can say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the verdict.[17]

Both legal and factual sufficiency are measured by the elements of the offense as defined by a hypothetically correct jury charge.[18] "A person commits an offense [of aggravated perjury] if he commits perjury as defined in Section 37.02, and the false statement: (1) is made during or in connection with an official proceeding; and (2) is material."[19] Section 37.02 of the penal code states that "[a] person commits an offense if, with intent to deceive and with knowledge of the statement's meaning: (1) he makes a false statement under oath . . . ."[20]

## B. False Statement

By his first through sixth issues, appellant contends that the evidence is legally and factually insufficient to support a finding that, before the grand jury and in his deposition, he made the following false statements: (1) he was not or did not become sexually aroused or excited; and (2) he did not touch Espinosa's breasts.

*1. Count 1*[21]

---

[16] *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006).

[17] *Id.* at 417.

[18] *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *Adi v. State*, 94 S.W.3d 124, 131 (Tex. App.–Corpus Christi 2002, pet. ref'd).

[19] TEX. PENAL CODE ANN. § 37.03.

[20] *Id.* § 37.02.

[21] Count one alleged that appellant made a false statement when he testified before the grand jury that he had not kissed Espinosa, touched her breasts, and become sexually aroused or excited during the encounter.

By his first issue, appellant contends that the evidence is legally insufficient to show that when he testified before the grand jury, he made a false statement when he stated that he was not sexually aroused. Appellant does not challenge the legal sufficiency of the evidence supporting a finding that he made a false statement before the grand jury when he denied kissing Espinosa or telling her he was sexually aroused. We construe appellant's issue as challenging the legal sufficiency of the evidence supporting a finding that appellant made a false statement at the grand jury proceeding.

Guerra testified that a grand juror asked appellant if he was sexually aroused; and, although Guerra did not state how appellant replied to that specific question, Guerra testified that appellant "kept denying everything" and stating that "nothing inappropriate happened." Furthermore, all three grand jurors testified that appellant denied Espinosa's allegations. From this evidence, a rational trier of fact could have reasonably inferred that when appellant was asked by the grand juror if he was sexually aroused, appellant denied it.[22] However, in his statement to Castaneda, appellant stated that he "consensually" touched both of Espinosa's breasts, their lips touched "for about a second," and he told Espinosa, "'mira como me dejastes' meaning that she had turned [him] on." Therefore, viewing the evidence in the light most favorable to the jury, we conclude that a rational trier of fact could have found that when appellant testified at the grand jury proceeding, he made a false statement.[23] We overrule appellant's first issue.

*2. Count Two*[24]

---

[22] *See Hooper*, 214 S.W.3d at 14-15 ("Juries are permitted to make reasonable inferences from the evidence presented at trial, and circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor.").

[23] *See id.*; *Powell*, 194 S.W.3d at 506; *Guevara*, 152 S.W.3d at 49; *Escamilla*, 143 S.W.3d at 817.

[24] Count two alleged that appellant made a false statement when stated at his deposition that he had not kissed Espinosa, touched her breasts, and become sexually aroused or excited during the encounter.

14

By his third and fourth issues, appellant contends that the evidence is legally insufficient to support a finding that during his deposition, he made a false statement when he stated that he did not touch Espinosa's breasts. By his fifth and sixth issues, appellant contends that "evidence that [he] stated in the deposition that he was not sexually aroused is legally [and factually] insufficient." Appellant does not challenge the legal sufficiency of the evidence supporting a conclusion that he made a false statement at his deposition when said he did not kiss Espinosa. We construe appellant's issue as challenging the aggravated perjury element of making a false statement.

Espinosa alleged that appellant grabbed her breasts, kissed her, and stated that his penis was "hard." Villalobos testified that appellant was aware of Espinosa's allegations against him. Moreover, the record reveals that appellant was deposed after he testified before the grand jury, where the grand jurors specifically asked appellant if he touched Espinosa's breasts, kissed her, or was sexually aroused.[25] At the deposition, appellant stated that Espinosa's allegations were not true and denied kissing any woman other than his wife since he had been married.[26] Subsequently, appellant told Ranger Castaneda that he "touched" lips with Espinosa, touched both her breasts, and he told Espinosa that "she had turned [him] on." From the evidence presented, the jury could have reasonably inferred that when appellant stated that the allegations were not true, he was denying that he grabbed Espinosa's breasts, kissed her, and was sexually aroused.[27] Viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could

[25] Defense exhibit number one shows that the grand jury disapproved the complaint against appellant on May 18, 2006, and State's exhibit one reveals that appellant was deposed on August 21, 2006.

[26] See TEX. CODE CRIM. PROC. ANN. art. 21.14 (Vernon 2009) (providing that "an indictment for perjury or aggravated perjury need not charge the precise language of the false statement, but may state the substance of the same . . . .").

[27] See Hooper, 214 S.W.3d at 14-15.

15

have reasonably found that at his deposition, appellant made a false statement under oath.[28]  Furthermore, viewing the evidence in a neutral light, we cannot conclude that the jury's verdict seems clearly wrong and manifestly unjust or is against the great weight and preponderance of the evidence.[29]  We overrule appellant's third, fourth, fifth, and sixth issues.

## C.  Material Statement

By his seventh, eighth, ninth, and tenth issues, appellant contends that the "evidence that the statement[s] made by appellant in the deposition concerning kissing [Espinosa and touching her breasts were] material is legally and factually insufficient." Without citation to authority, appellant argues that if Espinosa's attorney had asked whether appellant kissed Espinosa, then his statement would have been material to the proceedings; however, the actual question asked—whether appellant kissed any woman other than his wife—was not material.[30]  Appellant also alleges that he was not asked at his deposition whether he touched Espinosa's breasts and that the question regarding whether appellant touched Espinosa's private parts was not material.[31]  Appellant has not provided a clear and concise argument with appropriate citation to authority.  Therefore, we conclude that appellant has waived this issue.[32]  We overrule appellant's seventh, eighth, ninth, and tenth issues.

---

[28] *See id.*; *Powell*, 194 S.W.3d at 506; *Guevara*, 152 S.W.3d at 49; *Escamilla*, 143 S.W.3d at 817.

[29] *See Watson*, 204 S.W.3d at 414-15.

[30] We note that at trial, Villalobos testified that appellant was aware of Espinosa's allegations, which Espinosa testified included allegations that appellant touched her breasts, kissed her, and stated his penis was "hard."  During his deposition, which was held after the grand jury proceeding, appellant stated that Espinosa's allegations were not true.

[31] Appellant states in his brief that private parts only include the genitalia, anus, and buttocks.

[32] *See* TEX. R. APP. P. 38.1(i).

16

## D. Under Oath

By his thirteenth issue, appellant contends that "[t]he evidence that [he] was placed under oath before the grand jury is legally insufficient." We disagree. Guerra testified that appellant was under oath when he testified before the grand jury. Therefore, viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant was under oath when he testified before the grand jury.[33] We overrule appellant's thirteenth issue.

## E. Appearance in Willacy County

Appellant briefs his fifteenth and sixteenth issues together. By his fifteenth issue, appellant contends, without citation to authority, that "[t]he evidence that [he] appeared in Willacy County for his deposition [as alleged in the indictment and the jury charge] is legally insufficient"; by his sixteenth issue appellant contends that the evidence is factually insufficient to support such a finding. However, appellant concedes that venue was proper in Willacy County. Appellant appears to argue that the State failed to prove that the perjury actually occurred in Willacy County, which he claims is an element of the offense of aggravated perjury.[34] However, appellant has not provided a clear and concise argument with appropriate citation to authorities supporting his argument.[35] Therefore, we conclude that he has waived these issues.[36] We overrule appellant's fifteenth and sixteenth issues.

---

[33] *See Hooper*, 214 S.W.3d at 13; *Powell*, 194 S.W.3d at 506; *Guevara*, 152 S.W.3d at 49; *Escamilla*, 143 S.W.3d at 817.

[34] *But see Sudds v. State*, 140 S.W.3d 813, 817 (Tex. App.–Houston [14th Dist.] 2004, no pet.) ("Though venue must be established, it is not a "criminative fact" and thus not an essential element of the offense.") (citing *Boyle v. State*, 820 S.W.2d 122, 140 (Tex. Crim. App. 1989), *overruled on other grounds*, *Gordon v. State*, 801 S.W.2d 899, 911 n.13 (Tex. Crim. App. 1990)).

[35] *See* TEX. R. APP. P. 38.1(i).

[36] Moreover, if the jury may reasonably conclude that the offense was committed in the county alleged, then evidence of venue is sufficient. *Rippee v. State*, 384 S.W.2d 717, 718 (Tex. Crim. App. 1964). For the offense of aggravated perjury, venue is proper either in the county where the false statement was made or

### III. CHARGE ERROR

By his eleventh issue, appellant contends that "[t]he trial court erred in instructing the jury that proof of the falsity of any statement was sufficient." Appellant appears to argue that the State charged him with three separate criminal acts and that the trial court was required to instruct the jury that "it [could] not return a guilty verdict unless it unanimously agree[d] upon the commission of any one of the acts."

However, appellant has not provided a clear and concise argument with appropriate citations to authority supporting his contention.[37] Therefore, we overrule appellant's eleventh issue.

### IV. NAMES OF THE GRAND JURORS

By his twelfth issue, appellant contends that the trial court erred by denying his request for the State to disclose the names of the grand jurors who were present when he allegedly made the false statements. Appellant also complains that the trial court prohibited him from contacting a grand juror whose identity he knew.[38] Appellant argues that article 20.02 of the Texas Code of Criminal Procedure does not require that the identity of the grand jurors be kept secret. In the alternative, appellant argues that he showed a particularized need to know who the grand jurors were and to speak to them.

#### A. Relevant Facts

At a pre-trial hearing, appellant requested several "grand jury transcripts." The State

---

in the county where the false statement is used or attempted to be used. *See* TEX. CODE CRIM. PROC. ANN. art. 13.03 (Vernon 2005). "[D]eposition testimony by a party in a civil lawsuit is 'used or attempted to be used' in the county in which the underlying lawsuit is pending as soon as that party makes a false statement in his sworn deposition with the intent to deceive and with knowledge of the statement's meaning." *Soliz v. State*, 97 S.W.3d 137, 138 (Tex. Crim. App. 2003). In this case, Espinosa's civil lawsuit was pending in Willacy County.

[37] *See* TEX. R. APP. P. 38.1(i).

[38] This person did not testify at appellant's aggravated perjury trial.

18

acknowledged that it had produced several transcripts and stated that it would provide a grand jury transcript of Espinosa's testimony, if it existed, because it was "related to this case." Appellant then explained to the trial court that his testimony at the grand jury proceeding wherein he allegedly committed perjury was not recorded. Appellant argued that he was therefore at a disadvantage and asked the trial court to order the State to produce a list of the names of the grand jurors who were not testifying and who were present when he testified. Appellant also asked for permission to communicate with those grand jurors. The trial court responded that all grand jurors must take an oath to keep the proceedings secret, and denied appellant's request. The following exchange between appellant and the trial court occurred:

[The Trial Court]: You cannot contact the grand jurors because they remain under the oath to keep secret what they learned at a grand jury proceeding.

[Defense Counsel]: Does that apply to the [S]tate also?

[The Trial Court]: The [S]tate has dealt with the grand jurors before.

[Defense Counsel]: Not [this prosecutor].

[The Trial Court]: The State of Texas has dealt with the grand jurors before.

[Defense Counsel]: Wouldn't that be an unfair advantage to the defense?

[The Trial Court]: That's what the law says.

[Defense Counsel]: I understand that, but how am I to going to know about Brady material? Are you going to order the [State] to interview each juror?

[The Trial Court]: I'm not going to order the [S]tate which witnesses to present to the jury that decides the issues here.

[Defense Counsel]: Well, Judge, if you have twelve potential witnesses, they're in a room, they've heard the same question, they've heard the same answer.

19

[The Trial Court]: This is what I'm going to do. I will give you the opportunity to brief the issue.

. . . .

[Defense Counsel]: My first inquiry, Judge, was with regards to Brady. But my question is am I allowed to know at least who the grand jurors were there so that I can at least exercise my right to subpoena and have them in court? Now, whether you allow them to testify or not, that's another matter. That can be taken care of on appeal, but I would be denied the right to, are you going to deny me that right?

[The Trial Court]: I'm not going to do that today. I may do it later. And I've invited you to present me authorities and written argument in a brief that I will look at very carefully.

[Defense Counsel]: Will you require the [S]tate also, Judge? Because I mean, this is a matter I'm requesting it, but shouldn't they have also authority to say yeah, I'm not entitled to it?

[The Trial Court]: I'm telling you what you have to do. If you want to convince me, to persuade me, I'm telling you what you have to do. Have I made myself clear?

. . . .

[Defense Counsel]: Can you clarify the ruling . . . .

. . . .

[Defense Counsel]: Because we were, we went into a discussion. My request was the name of, the names of all the grand jurors. That's denied.

[The Trial Court]: Give me authority that supports your request. The next item.

[Defense Counsel]: Brady material from these witnesses, which is of Constitutional magnitude, that it's the obligation to the [S]tate to provide with regard to those grand jurors. Is that granted or denied?

[The Trial Court]: Give me authority with regard to that request. What else?

20

[Defense Counsel]: But for now it's denied?

[The Trial Court]: I told you I'm not going to make a ruling right now. I'm giving you the opportunity to persuade me.[39]

At trial, appellant re-urged his request for the trial court to order the State to disclose the identities of the other members of the grand jury who were present when appellant allegedly committed perjury. Appellant argued that under the principles of due process, he was entitled to know the identity of the members of the grand jury who were present. Appellant then informed the trial court that the State had been allowed to interview the other members of the grand jury and that the State claimed that no "Brady material" was revealed. However, appellant argued that the State did not disclose what questions it asked the non-testifying members of the grand jury. Appellant then asked for the same opportunity that was given to the State. Outside the presence of the jury, appellant testified that he knew the identity of one of the non-testifying grand jurors, but he did not know the identity of the others; he then requested to subpoena that grand juror. The State then argued:

> I don't believe a word this man says, quite frankly, but they haven't shown that there's anything exculpatory, and while they're entitled to be, you know, confronted with the witnesses against them, I'm not calling these people against them [appellant]. I'm calling who I wanna call. You know, I decide who I wanna subpoena and who I wanna call to the witness stand. They don't decide for me. There's nothing exculpatory and they have—it's just a fishing expedition, and they're not entitled to it and they have no authority.

The trial court denied appellant's request.

## B. Error

Appellant argues on appeal that the identities of grand jurors are not required to be kept secret as the trial court ruled in this case. The State, on the other hand, appears to

---

[39] The record is silent regarding whether appellant followed the trial court's instructions and filed a brief.

21

argue that because the identities of the grand jurors are part of the "proceedings" of a grand jury, the identities must be kept secret under article 20.02 of the code of criminal procedure and that there is no authority requiring the State to disclose the requested information without a court order. Therefore, the State concludes that even if appellant showed a particularized need, as required under 20.02, for disclosure of the grand jurors' identities, it was within the trial court's discretion to deny appellant's request for the grand jurors' identities.

Under article 20.02, "[t]he proceedings of the grand jury shall be secret."[40] Black's Law Dictionary defines the term "proceedings" as "[t]he regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment."[41] Black's states that "'[p]roceeding' is a word much used to express the business done in courts."[42] In *In re Reed*, the Bexar County District Attorney argued that grand jury summonses were secret.[43] The court of appeals concluded that the grand jury summonses were not "proceedings" under the statute[44] and that the Texas Code of Criminal Procedure, unlike the federal rule, did not expressly provide that a grand jury subpoena or summons was secret.[45] The San Antonio Court of Appeals stated:

> Viewed in the context of surrounding provisions, the term, "proceedings" as used in Article 20.02(a) could reasonably be understood as encompassing matters that take place before the grand jury, such as witness testimony and

---

[40] TEX. CODE CRIM. PROC. ANN. art. 20.02 (Vernon Supp. 2009).

[41] BLACK'S LAW DICTIONARY 1324 (9th ed. 2009).

[42] *Id.*

[43] *In re Reed*, 227 S.W.3d 273, 275 (Tex. App.–San Antonio 2007, no pet., orig. proceeding).

[44] We note that the Legislature later amended 20.02, and the statute now provides that a grand jury subpoena or summons related to a grand jury investigation is secret to the extent necessary to prevent the unauthorized disclosure of a matter before the grand jury. *See* TEX. CODE CRIM. PROC. ANN. art. 20.02(h).

[45] *In re Reed*, 227 S.W.3d at 276.

22

deliberations. For example, article 20.02(b) makes clear that a person "operating an electronic recording device" or "preparing a typewritten transcription" must not disclose "anything transpiring before the grand jury, regardless of whether the thing transpiring is recorded."[46]

We agree that the term "proceedings" as used in article 20.02 encompasses matters that take place before the grand jury, including witness testimony and the grand jury's deliberations. We conclude that the term "proceedings," as used in article 20.02, does not refer to the identities of the grand jurors.[47] Therefore, the identities of the grand jurors in appellant's case were not required to be kept secret under article 20.02. Furthermore, the State cites to no authority, and we find none, supporting a conclusion that the identities of the grand jurors are required to be kept secret.[48] Because there is no authority supporting a conclusion that the grand jurors' identities are secret, we conclude that the trial court erred when it denied appellant's request for disclosure of their identities.

In this case, the trial court also denied appellant's request to interview the grand jurors who were present when he made the false statements on the basis that the proceedings were secret under article 20.02. However, the trial court allowed the State to interview every grand juror who was present at that grand jury proceeding, and present testimony from those grand jurors it determined supported its case of perjury against appellant.[49] When the trial court allowed the State to reveal what transpired before the

---

[46] *Id.*

[47] *See id.*

[48] *See* Op. Tex. Att'y Gen. No. GA-0422 (2006) (stating that "the grand jury organization process is conducted in open court. As a practical matter, then, grand jurors' identities will become public during the grand jury organization process. . . . [W]e can find nothing in the law that overcomes the presumption that [grand jury lists] are public information; therefore, a clerk or a judge has no duty to keep a grand jury list confidential after the clerk has opened the envelope containing the names of prospective grand jurors.").

[49] *See Wisdom v. State*, 42 Tex. Crim. 579, 61 S.W. 926, 927 (1901) ("So the evidence of the witness given before the grand jury may be introduced against him under a charge of perjury, through the mouth or mouths of the grand jurors.").

grand jury, the secrecy of those proceedings had been pierced.[50] In *United States v. Mays*,

a federal district court stated:

> One well-recognized, long-established exception to the general rule that
> grand jury testimony is secret is that a defendant accused of perjury before
> a grand jury is entitled to review the entirety of his own testimony before the
> grand jury. The reason for this rule is obvious. A statement or statements
> taken out of context can appear to be misleading and false, whereas the
> same testimony taken in its entirety is not false.[[51]]

We agree. However, in appellant's case, there was no recording of appellant's testimony;

appellant's only option then was to interview all of the grand jurors who were present when

he testified. Therefore, we conclude that the trial court erred in denying appellant's request

to interview the grand jurors who were present when he testified before the grand jury and

allegedly committed aggravated perjury. Having determined error, we next conduct a harm

analysis.

## C. Harm

An appellate court must disregard nonconstitutional error that does not affect a

defendant's "substantial rights."[52] This Court may not reverse the judgment for

nonconstitutional error if, after examining the record as a whole, we have a fair assurance

that the error did not have a substantial and injurious effect or influence in determining the

jury's verdict.[53]

Neither party has the burden of proof under rule 44.2(b). Rather, the

---

[50] *Stern v. State*, 869 S.W.2d 614, 622 (Tex. App.– Houston [14th Dist.] 1994, pet. denied) (providing that grand jury proceedings are generally secret, but acknowledging that "Texas courts have permitted the veil of grand jury secrecy to be pierced in only a few instances."); *see In re 5 Byrd Enters.*, 980 S.W.2d 542, 543 (Tex. App.–Beaumont 1998, no pet.) (recognizing that in Texas, courts have permitted the veil of grand jury secrecy to be pierced in a few instances including for the purposes of, among other reasons, impeaching a witness or proving perjury).

[51] *United States v. Mays*, 460 F. Supp. 573, 575 (E.D. Tex. 1978).

[52] Tex. R. App. P. 44.2(b).

[53] *Garcia v. State*, 126 S.W.3d 921, 927 (Tex. Crim. App. 2004).

appellate court will examine the record for purposes of determining harm. If the error had no influence or only a slight influence on the verdict, it is harmless. However, if the reviewing court is unsure whether the error affected the outcome, the court should treat the error as harmful, i.e., as having a substantial and injurious effect or influence in determining the jury's verdict.[54]

In *Lopez v. State*, this Court explained that in a harm analysis "[w]e are not concerned . . . with whether there was sufficient evidence on which [the appellant] could have been convicted."[55] Quoting from the United Supreme Court case of *Kotteakos v. United States*, we stated:

> [I]f one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.[56]

A "grave doubt" is defined to "mean that, in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error."[57] In other words,"in cases of grave doubt as to harmlessness the petitioner must win."[58]

In this case, the trial court did allow the State to present testimony from three grand jurors and did allow the State to interview the nontestifying grand jurors. The State relied heavily on the testimony of the those three testifying grand jurors. However, the jury did not hear testimony from those grand jurors that the State did not call to testify, and the record is silent regarding what their testimony may have been because the trial court did

---

[54] *Mitten v. State*, 228 S.W.3d 693, 696-97 (Tex. App.–Corpus Christi 2002, pet. dism'd).

[55] 288 S.W.3d 148, 178 (Tex. App.–Corpus Christi 2009, pet. ref'd).

[56] *Id.* (quoting *Kotteakos v. United States*, 328 U.S. 750, 765 (1946)).

[57] *Id.*

[58] *Gamble v. Sate*, 199 S.W.3d 619, 624 (Tex. App.–Waco 2006, no pet.).

25

not allow appellant to interview them. Although the State's case relied heavily on the grand jurors' testimony, the trial court did not allow appellant to interview any of the grand jurors. We do not know what the nontestifying grand jurors would have revealed to appellant. In the face of a silent record, we harbor grave doubts as to whether appellant was harmed by the trial court's failure to allow him to interview the nontestifying members of the grand jury who allegedly witnessed him commit perjury.[59] Therefore, because we are unsure whether the error affected the outcome of appellant's trial, we must treat the error as harmful, i.e., as having a substantial and injurious effect or influence in determining the jury's verdict.[60] We sustain appellant's twelfth issue.

## IV. CONCLUSION

We reverse the trial court's judgment as to count one in the indictment and remand for further proceedings as to that count, and we affirm the remainder of the trial court's judgment. Because we have reversed count one, we need not address appellant's remaining issues.[61]

LINDA REYNA YAÑEZ,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).
Delivered and filed the
31st day of August, 2010.

---

[59] *See id.* (concluding that "[i]n the face of a silent record, [there were] grave doubts as to whether Gamble was harmed by the [trial] court's failure to admonish him of the deportation consequences of his plea").

[60] *See Mitten*, 228 S.W.3d at 696-97.

[61] Appellant's remaining issues (two and fourteen) concern the factual sufficiency of the evidence supporting his conviction of count one. *See* TEX. R. APP. P. 47.1.